THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* SAMUEL F. DARR *et al.* Plaintiffs in Error.

*Opinion filed February 21, 1914.*

1. CRIMINAL LAW—*effect of absence of motion to quash indictment.* In the absence of any motion to quash the indictment the sufficiency of the indictment is to be determined without regarding any defect that would be cured by verdict.

2. SAME—*extent to which allegations in respect to means used in furtherance of conspiracy are material.* Where the charge in an indictment is conspiracy to obtain money and property from an insurance company by means of false pretenses, the allegations in respect to the means to be used and the acts that were done in furtherance of the conspiracy are only material for the purpose of showing the general character of the unlawful enterprise and do not amount to charging the completed offense. (*People* v. *Darr,* 255 Ill. 456, followed.)

3. SAME—*what amounts to a conspiracy to do an unlawful act.* Obtaining money or property by means of false pretenses is an offense indictable under the statute, and hence a combination of two or more persons to commit such offense falls within the definition of a conspiracy to do an unlawful act.

4. SAME—*one good count in the indictment will support a general verdict.* Where there is one good count in the indictment to which the evidence is applicable it will support a general verdict of guilty.

5. SAME—*when proof that the defendant obtained insurance on his building is admissible.* Proof that the defendant had recently procured policies of insurance on his building is admissible even though the policy involved in the transaction, upon which the prosecution is based, was a policy on household goods, where the building itself would be imperiled by the burning of the household goods alleged in the indictment to have been burned in pursuance of a conspiracy to obtain the money and property of the insurance company by false pretenses.

6. SAME—*what evidence with respect to payment of premium is not incompetent.* In a prosecution for conspiracy to obtain the money and property of an insurance company by false pretenses, it is not improper to prove that one of the defendants drew a draft in payment of the premium on the fire policy and that the draft was returned unpaid.

7. SAME—*what evidence is competent as an admission, though object of conspiracy was completed.* Evidence that one of the de-

fendants in a conspiracy case had a conversation with the witness several days after the object of the conspiracy was completed, at which time he gave the witness a check in part payment for his services in carrying out the conspiracy and requested him to cash it, saying that he would pay the balance in a few days, is competent as an admission against the defendant making the statement, and if it is desired to limit the evidence to him the other defendants should request an instruction to that effect, as it is not the duty of the court to give such an instruction unless so requested.

8. SAME—*when evidence that defendant was indebted to witness is not improper.* In a prosecution for conspiracy to obtain money and property of an insurance company by false pretenses in obtaining a fire insurance policy on household goods which were to be burned, it is not improper to permit a witness to testify that the defendant who owned the household goods owed him a large sum of money, where there is other evidence that such defendant was hard pressed financially and considerably in debt.

9. SAME—*what cross-examination is improper but harmless.* In a prosecution for conspiracy to obtain money and property of an insurance company by insuring household goods and burning them, it is improper, on cross-examining one defendant, to ask him about fires in other places which it is not shown had any connection with the transaction forming the basis for the offense charged; but such cross-examination is not harmful where the witness denied having had any connection with the fires referred to, and denied that any property of his was burned or that he had collected any insurance.

10. SAME—*it is not the law that each link in chain of circumstantial evidence must be proved beyond a reasonable doubt.* It is not the law that each link in the chain of circumstantial evidence must be proved beyond a reasonable doubt, but the reasonable doubt which will authorize a jury to acquit must be one arising from a consideration of the evidence as a whole.

11. SAME—*when defendants cannot complain of giving an instruction relating to defense of alibi.* Defendants cannot complain that an instruction relating to the defense of *alibi* was given at the instance of the prosecution, even though the evidence relied upon to support it was not intended to prove an *alibi* but to contradict a witness in the case, where there were instructions on the subject of *alibi* given at the request of the defendants.

12. SAME—*record need not show that the jury were attended by sworn officer when verdict was returned.* The fact that there is nothing in the record to show whether the jury were attended by a sworn officer when the jury returned into court after considering their verdict is not material, where the record shows no objection to the absence of such officer, if he was absent.

13. SAME—*when evidence of a telephone message to one defendant is properly excluded.* Proof that one of the defendants to a conspiracy case involving the insuring of household goods and burning them was called up on the telephone by some person and told that unless he paid a certain sum of money which he owed he would be "turned up" for his connection with the fire is properly excluded, where it is not shown that the person so telephoning had any connection with the case, as a witness or otherwise.

WRIT OF ERROR to the Appellate Court for the Second District;—heard in that court on writ of error to the Circuit Court of Peoria county; the Hon. T. N. GREEN, Judge, presiding.

FRANK P. DRENNAN, and FRANK A. HALL, for plaintiffs in error.

P. J. LUCEY, Attorney General, C. E. McNEMAR, State's Attorney, and A. B. GARRETT, for the People.

Mr. JUSTICE VICKERS delivered the opinion of the court:

Samuel F. Darr and Harvey Austin Six, the plaintiffs in error, together with Louis Wood Hill and John Doe, were indicted at the September term of the circuit court of Peoria county, 1911, for a conspiracy to obtain money and property from the German Fire Insurance Company of Peoria by means of false pretenses. Darr and Six were jointly tried at the January term, 1912, of the circuit court and found guilty, and each of them was sentenced to the penitentiary for a term of three years. A writ of error was sued out by them from the Appellate Court for the Second District, and that court having affirmed the conviction the record has been brought to this court for review by writ of error.

The indictment, which was in five counts, charged that the defendants, on the 17th day of March, 1911, with intent to cheat and defraud the German Fire Insurance Company, did then and there falsely and fraudulently conspire and agree together to knowingly and designingly obtain, by

means of false pretenses, $2500 lawful money of the United States and of the value of $2500, property of the said German Fire Insurance Company. In other counts it was alleged that the conspiracy was formed to obtain bank checks of the said insurance company of the value of $650, and alleged that in pursuance of said conspiracy the defendants falsely pretended and represented to the insurance company that a certain loss and damage by fire to household goods which were insured under a policy of said company was $650 when in truth and in fact said goods were not of that value, as the defendants well knew at the time they so falsely represented and pretended they were worth $650. In another count it was charged that defendants conspired together to cheat and defraud the insurance company aforesaid out of the sum of $650, and that in pursuance of said conspiracy the defendants obtained from the said insurance company a policy of insurance in the sum of $2500, insuring a certain lot of household goods against loss and damage by fire, and that in further pursuance of said conspiracy said defendants, on the 17th day of March, 1911, with intent to cheat and defraud said company by means of false pretenses, did feloniously, unlawfully, willfully and maliciously set fire to and burn and cause to be burned said lot of household goods and property so insured, as aforesaid, and in further pursuance of the said conspiracy the defendants falsely represented and pretended that the loss and damage by reason of said fire was $650, which said statement as to the value of said household goods was false and known to be false at the time it was made; that the goods were not, in fact, worth to exceed $300; and that in further pursuance of said conspiracy defendants falsely represented and pretended that the fire which caused the destruction of said goods happened in some way and manner and by some means unknown to and without the design, knowledge or procurement of said defendants, whereas in truth and in fact said goods were burned and caused

to be burned with the knowledge of Samuel F. Darr and by the procurement and connivance of the other defendants. Wood Hill, one of the defendants named in the indictment, testified on behalf of the People.

The facts as disclosed by the evidence, in general outline, are as follows: The plaintiff in error Darr resided in Quincy. He was engaged in dealing in real estate and had some relations with Barney & Hines, a real estate trading concern located at Memphis, Tennessee. Through some deal he had become interested in a property known as the Aldine Hotel, in Peoria, and exercised control both over the building and its contents. The hotel was heavily mortgaged and Darr's interest was merely in the equity. Plaintiff in error Six resided in Springfield, Illinois. He was a trader, dealing in real estate and to some extent in horses. Hill also resided in Springfield, and he and Six had been connected with each other in various horse deals. Six and Darr were acquainted and had loaned money one to the other and transacted other business together. On the 10th day of February, 1911, Darr took out $13,000 fire insurance on the Aldine Hotel building, making $9000 thereof payable, in case of loss, to the mortgagee as his interest might appear and $4000 payable to Thomas H. Lackland. On the 17th day of the same month he obtained $2000 additional insurance on said building, making the same payable to himself as his interest might appear. On the first day of March following he obtained a policy for $2500 on household goods located in the said Aldine Hotel building. This policy was payable to himself. Soon after the last policy was issued the building was vacated and a portion of the personal property was removed to Springfield. About the tenth of March a fire occurred in the attic of the Aldine Hotel building, but it was readily extinguished by the firemen and the damage done was of little consequence. About a week later, and on the night of March 17, 1911, the Aldine Hotel building, together with its contents, was

practically destroyed by fire. After this fire Darr made out proofs of loss and presented the same to the German Fire Insurance Company of Peoria. He received a check for $650 for loss and damage to personal property claimed to have been burned in the hotel. Hill testifies that Darr, Six, himself and another entered into an agreement to burn the Aldine Hotel in order to get the insurance money. He testifies that he made a contract to set fire to the hotel building for ten per cent of the $2500 policy and that Darr agreed to collect the insurance and pay him $250. He further testifies that on the evening of March 16 he, in company with Darr and Six, left Springfield on an Illinois Traction car for Peoria; that they left Springfield about eight o'clock in the evening, and when they arrived at Peoria they went direct to the Aldine Hotel building and made an inspection of the premises; that they then went to the Majestic Hotel, in Peoria, and took lodging for the night; that he and Six occupied room No. 17 at the Majestic Hotel and that Darr occupied room No. 2; that they all registered at the same time, about 11 :35 in the evening; that he (Hill) registered under the name of Hall, and the second name on the register is Six's, who registered as Knot, and just below that name Darr registered in his own name. Hill testifies that the following morning, March 17, the three (Darr, Six and Hill,) met at the Aldine Hotel building to make preparations to carry out their plan of burning the hotel; that they fastened the doors and nailed cleats on them, and in order to show that the building was occupied they procured a stove and bought some provisions and had the same delivered at the hotel building. After lunch Six and Hill went to a grocery store and purchased five gallons of coal oil and an oil stove, which they had delivered at the hotel building. They then placed some combustible material at the bottom of the elevator shaft and poured the five gallons of oil down the shaft. After giving Hill instructions about when and how to light the fire the

other parties left.  The fire was lit a little after dusk on
the evening of March 17.  When the firemen arrived they
found the doors locked and cleated, with boards nailed
across them.  After forcing an entrance it was found that
the fire was in the loft and roof and down the elevator
shaft, which is described by the firemen as "a regular roar-
ing furnace."  After Darr had collected the $650 from the
insurance company he gave Six a check for $75 and Six
gave the same to Hill in part payment of the $250 Hill -
was to receive for burning the property.  Hill testifies that
Darr told him to cash the check and he would pay him the
balance of the $250 later.  Darr afterwards sold all that
was saved of the furniture in the hotel building for $100.

The foregoing statement is based, in the main, upon the
testimony of the witness Hill.  His testimony is corrobo-
rated in several important particulars.  The most important
corroborative facts and circumstances are the following:
A witness by the name of Andy Terrill was called by the
People and testified that he resided in Springfield, Illinois,
and had lived there for more than four years; that he
maintained an office at 113 South Fourth street; that there
were three rooms in his office.  This witness testified that
he had been acquainted with plaintiff in error Darr for
two and one-half years and that Darr was a frequent caller
at his office; that he had had business transactions with
Darr and had loaned him small sums of money on differ-
ent occasions; that in January, 1911, Darr came to his of-
fice and went into a private room and told Terrill that he
had been approached by a party who would burn the Aldine
Hotel for ten per cent of the insurance; that Darr said
that the party claimed to have burned several buildings, and
he asked the witness what he thought of it.  Terrill tes-
tifies that he told him that he had never heard of such a
thing and that it would be very dangerous; that consider-
able conversation was had in relation to the matter, dur-
ing which Darr said that it was Hill who had made the.

proposition to burn the hotel, and that Hill had said that he would use kerosene or gasoline to burn the building and that he would saturate cotton and throw the same down the air shaft; that Darr stated that he was very hard pressed for money and did not know what to do and had come to Terrill for advice. Terrill testifies that he told Darr that that plan of raising money was a very dangerous one and he would probably get into trouble, and that the insurance company might not pay any part of the insurance, and employed other arguments to discourage Darr from having anything to do with the matter of burning this property; that finally, after the conversation, Darr said he would take his advice and drop it; that later Darr came again to Terrill's office and had another talk, which Darr introduced by saying, "That man Hill has been after me again," and said, "He wants to burn that building; what do you think of it?" This last conversation was two or three weeks before the fire. The second conversation was in substance the same as the first, and Darr left, saying that he would not have anything to do with Hill in connection with this proposition to burn the building. Terrill testifies that after the fire Hill and Darr met at his office and had a few minutes' private conversation in his back room, but he does not testify what was said between them.

Horace Greeley Clements testified that on the morning of the 18th of March, which was the next day after the fire, he was in Whalen's saloon, in Springfield, and that Wood Hill was there, and that Hill asked witness to go to the C., P. & St. L. depot, in Springfield, and get a Peoria paper; that witness did so and returned with the paper, which contained an account of the Aldine fire. The witness says that he did not read the account, but that Hill said that the paper contained an account of the burning of the Aldine Hotel.

It is proven by merchants who live in Peoria that Hill and another man whom the witnesses are not able to iden-

tify either as Six or as Darr, purchased an oil stove, five gallons of kerosene or gasoline and a small quantity of groceries and had the same delivered at the Aldine Hotel building on the day of the fire. The hotel building was unoccupied and no reasonable explanation is given for the purchase and delivery of the goods at the hotel at that time, which adds strength to the probability that Hill's explanation of the transaction is the true one. The firemen who answered the alarm of fire testified that upon arriving at the building the doors were locked and that an entrance could not be effected without battering the doors down, and that upon getting inside it was discovered that cleats or boards had been nailed across the doors on the inside. It is also proven by the firemen that the fire was raging in the elevator shaft and in the attic of the building when they arrived upon the scene.

The delivery of a check for $75 to Hill by plaintiff in error Six, signed by plaintiff in error Darr, is admitted. At the time the check was delivered to Hill by Six a receipt was given by Hill, reciting that he had received the $75 for four sets of harness which Six claims to have purchased from Hill, but it is admitted that no harness was ever seen by Six and none was, in fact, received. Hill says that the receipt for harness was merely a blind to cover up the real character of the transaction, and the improbability and unreasonableness of the explanation given by Six tends to corroborate Hill's testimony.

A leaf from the register of the Majestic Hotel containing the register of guests for March 16, 1911, was introduced, and shows that at 11:35 P. M. three persons registered as Hall, Knot and Darr. This accords with Hill's testimony in reference to stopping over night at the Majestic Hotel and the names under which they registered. On behalf of plaintiff in error Six, testimony was introduced tending to establish that he was in Springfield, Illinois, on the evening of March 16 and also during the following day.

This evidence is not at all conclusive, since everything testified to on this point may have been true and still Six may have left Springfield at or about eight o'clock on the evening of the 16th and returned from Peoria the following day. But even if the evidence covered the entire time, its only effect would be to prove that Hill's testimony as to Six's going to Peoria on the evening of the 16th of March was false. It is not pretended that either Six or Darr actually set fire to the building. All of the evidence for defendant in error is directed to establish the theory that Hill was the party who actually set fire to the property. Again, the offense charged against plaintiffs in error is not arson, nor are they indicted for maliciously burning property with an intent to defraud an insurance company. The charge here is conspiracy to do an unlawful act, namely, to obtain money or valuable checks from the German Fire Insurance Company by false pretenses. Six might well be a party to a conspiracy, as charged, without personally having been present in Peoria on the 16th of March or any other day, so that the evidence tending to show that he did not spend the night of the 16th of March at the Majestic Hotel, in Peoria, under the name of Knot, is only important as bearing upon the truth or falsity of the testimony of Hill upon this point. Darr admits that he was in Peoria on the evening of the 16th; that he stayed over night at the Majestic Hotel and that he spent a part of the following day at the Aldine Hotel property, but denies that he had any arrangement with Hill or any other person to have the property burned.

The plaintiffs in error contend that the verdict is not supported by the evidence. The facts already recited were ample to justify the jury, if they gave credit to the testimony of Hill, in returning the verdict of guilty. Whether Hill was worthy of belief under all of the circumstances was a question for the jury to decide. As will appear from the facts above recited, his testimony was corroborated up-

on a number of material points. We think the jury were entirely warranted in reaching the conclusion that Hill's account of the transactions was true.

Plaintiffs in error contend that the indictment is not sufficient to support a judgment,—that it does not charge any offense under the law. The argument upon this point is that the indictment charges a conspiracy to defraud an insurance company, which, it is said, is not an indictable offense. There is no motion to quash the indictment in the record, and its sufficiency is therefore to be determined without regarding any defect which is cured by the verdict. The contention of plaintiffs in error as to the sufficiency of the indictment is based upon a misapprehension of the meaning to be given to the language of the indictment itself. In the case of *People* v. *Darr,* 255 Ill. 456, this court construed the third count of this indictment and held that it contained a charge of conspiracy to obtain money from the insurance company by means of false representations and pretenses, and that it was not, as contended by plaintiff in error in that case, an indictment for burning property for the purpose of defrauding an insurance company. This court in that case pointed out the distinction between a conspiracy to commit an offense and the actual commission of the offense. The charge in the case before us is one of conspiracy, and the allegations in respect to the means to be used and the acts that were done in furtherance of such conspiracy are only material for the purpose of showing the general character of the unlawful enterprise. Section 46 of the Criminal Code provides that whoever, with intent to cheat and defraud another by any false pretenses, thereby obtains from such person any money, personal property or other valuable thing, shall be fined, etc. Obtaining money or property by means of false pretenses is an offense indictable under our statute, and a combination of two or more persons to commit such an offense falls under the definition of a conspiracy to commit an unlawful

act. The verdict in this case was a general verdict, and the rule is established by many decisions of this court that one good count in an indictment will support such a verdict. (*Ochs* v. *People,* 124 Ill. 399; *Gallagher* v. *People,* 211 id. 158.) We think the third count of the indictment is unquestionably a good count for conspiracy to obtain money by false pretenses. We do not mean to be understood as holding that the other counts are defective. See *Johnson* v. *People,* 22 Ill. 314.

Plaintiffs in error complain of the rulings of the court upon the admission and exclusion of evidence. The first complaint in this respect is, that the court permitted an insurance agent to testify that the plaintiff in error Darr applied for and procured two policies of insurance on the Aldine Hotel building. The policies referred to are those for $13,000 and $2000, respectively, that have been mentioned in the preceding statement. The objection to this evidence is, that these policies were not directly involved. The money obtained from the insurance company, which is the basis of the prosecution, was paid in settlement of a loss on household goods and not upon the building itself, but evidence of the taking out of the other insurance by Darr upon the building which contained the household goods was not irrelevant, since it involved transactions with the same insurance company, and near enough in point of time to the main transaction to make it competent as an independent part of a general plan to insure all of the property in which Darr was interested that would be liable to destruction by the fire that is alleged in the indictment. If Darr could have shown that in order to destroy the contents of the building it would be necessary to burn the building itself, which was uninsured, it would have been a relevant and important fact as tending to rebut the inference that he had willfully caused the fire, and, on the other hand, the fact that all of the property belonging to Darr which could be imperiled by the fire was fully insured was

proper evidence, and the court did not err in admitting proof of these facts.

The proof shows that plaintiff in error Darr drew a draft on Barney & Hines, of Memphis, Tennessee, in payment of the premium, and this draft was returned unpaid, and the court permitted proof of this fact over the objections of Darr. The ruling of the court in admitting this evidence is complained of. The theory of the prosecution is, that Darr and Six entered into a conspiracy with Hill to have this property heavily insured and burn the same in order to obtain the insurance. The payment of the premium or the delivery of the draft' drawn by Darr for that purpose was a part of the transaction. The payment of the premium was simply 'one fact connected with the transactions with the insurance company. This testimony was properly admitted.

It is next complained that the court erroneously permitted the witness Hill to relate a conversation between himself and Darr which occurred in Springfield some days after the fire, in which Hill testifies that Darr told him to cash the $75 check which Darr had made on a Quincy bank and given to Six, and that he (Darr) would pay him the balance of the $250 in a few days. Hill's testimony is that Six delivered this check to him in part payment of his share under the terms of the conspiracy. The conversation testified to by Hill with Darr, if true, tended to show that Darr made and delivered the check to Six with the understanding that it was to be passed to Hill in part payment of the $250 which he says he was to receive for burning the property. It is true, as counsel for the plaintiffs in error contend, that after the object of a conspiracy is completed the declarations of a co-conspirator are only admissible against himself, but that rule does not exclude statements made by parties, in the nature of admissions, which are competent as against the party making them, notwithstanding the object of the conspiracy is accomplished

before such statements were made. Plaintiffs in error complain that the court should have limited the application of this testimony to Darr, alone. No request for an instruction of that kind was presented, and it was not the duty of the court to give such direction unless requested to do so by plaintiffs in error.

It is complained that the witness Osby was permitted to testify that plaintiff in error Darr was indebted to him about $2500. This testimony was developed on the cross-examination of the witness. The evidence showed that Osby had had quite a number of business transactions with Six and that he was also on intimate terms with Darr, and this evidence was proper, as tending to show that Darr was hard pressed for money. It appears from the evidence of other witnesses that Darr had frequently borrowed money of Six and that he owed Six several hundred dollars at the time of the fire. Six admits in his testimony that he had frequently loaned Darr money, and that when Darr called on him for money and he could not accommodate him otherwise, he would borrow himself and then loan the money to Darr. The witness Andy Terrill testifies that Darr told him, before the fire, that he was very hard pressed financially and was considerably in debt, and that Darr said that Hill had approached him and offered to burn the Aldine Hotel to enable Darr to raise some money by collecting the insurance. We see no objection to the proof that he owed Osby at the same time $2500.

Complaint is made that plaintiff in error Six was asked about certain fires that had occurred in Springfield, one of which was a store owned by the wife of Six. These questions were asked Six on his cross-examination. The point is made that the effect of asking these questions was to insinuate that there had been something crooked in connection with these fires, and to arouse a possible suspicion in the minds of the jury that Six was in some way responsible for such fires. It is not pretended by the defendant in er-

ror that any of the fires in Springfield had any connection whatever with the burning of the Aldine Hotel, in Peoria. Some of them apparently occurred several years before the burning of the Peoria property. This cross-examination was improper. It was not germane to anything that had been testified to by Six in chief. Six, however, in answer to these interrogatories, disclaimed any interest in any of the fires referred to, denied that he had any property destroyed in any of them or that he ever collected any insurance as the result of such fires, and his answers were not in any way contradicted. While this cross-examination was improper, still, in view of the answers given by the witness, we cannot believe that the jury were misled or otherwise unfavorably influenced against plaintiffs in error by reason of this testimony. We think the admission of this evidence was harmless.

The plaintiffs in error complain of the giving of a large number of instructions on behalf of the People. The first instruction about which complaint is made is No. 18. That instruction advised the jury that the rule requiring the jury to be satisfied beyond a reasonable doubt in order to warrant a conviction does not require that the jury should be satisfied beyond a reasonable doubt as to each link in the chain of circumstances relied upon to establish the defendants' guilt; that it is sufficient if, taking the testimony all together, the jury are satisfied beyond a reasonable doubt that the defendants are guilty. Plaintiffs in error contend that the law is that each link in a chain of circumstances must be established beyond a reasonable doubt. Such is not the law. The reasonable doubt which will authorize a jury to acquit in criminal cases is a reasonable doubt of guilt which arises from a consideration of the evidence as a whole. The rule contended for by plaintiffs in error would, if enforced, render convictions in criminal cases upon circumstantial evidence practically impossible. The instruction

is not open to the objection urged against it. *Gott* v. *People,* 187 Ill. 249.

Instruction 35 is complained of. This instruction relates to the defense of alibi. The instruction is accurate but it was not proper in this case. There was no such defense as alibi relied on by either of plaintiffs in error. It is true that Six introduced evidence tending to prove that he was in Springfield, Illinois, on the evening of the 16th of March and on the day following, but this evidence, as already pointed out, was not intended to prove an alibi but to contradict the testimony of Hill, who testified that Six went with Darr and Hill to Peoria on the evening of the 16th of March. But the plaintiffs in error are in no position to complain of the giving of this instruction. Instructions 33 and 34 given at their instance are on the subject of alibi. There was no occasion for the giving of either of these instructions, but since plaintiffs in error have procured the giving of instructions upon this subject, they can not complain that the court gave an instruction upon the same point at the request of the other party.

Instruction 38 is also criticised by plaintiffs in error. This instruction is accurate and is not open to the objection made to it.

Instructions 44, 45, 50, 51, 55, 57 and 58 are each objected to. The criticisms made upon these several instructions by plaintiffs in error in a general way are, that they do not state the law accurately. We have examined all of these instructions carefully, and while some of them may be open to criticism, we are not impressed that there is any error in any of them that would justify a reversal of this judgment. It would serve no good purpose to extend this opinion to discuss each of these instructions in detail.

Plaintiffs in error complain that the record fails to show that the jury were attended by a sworn officer when the verdict was delivered in court. The record shows that the jury retired to consider their verdict in charge of a sworn

officer. There is nothing in the record to show whether the officer accompanied the jury upon their return into court. The record shows no objection to the absence of such officer, if he was absent. There is no merit in this point.

It is also urged as a reason for reversing the judgment that the court refused to permit plaintiffs in error to prove that Darr received a communication from some person over the telephone, telling him that unless he paid a certain sum of money which he owed he would be turned up for his connection with the burning of the Aldine Hotel. The person who was supposed to have sent this message was a man by the name of Shelmyer. Shelmyer was not shown to have had any connection whatever with this case, was not a witness for either side, and if he made the supposed threat it had no connection with the case, and the court properly excluded it.

There being no reversible error in this record the judgment of the circuit court of Peoria county is affirmed.

*Judgment affirmed.*