# The People of the State of Illinois, Defendant in Error, v. Hugh E. Paddock, Plaintiff in Error.

## Gen. No. 7,119.

1. CONSPIRACY—*date alleged in indictment not material.* An allegation in an indictment charging conspiracy as of a certain date is not material and any date within the statute of limitations is sufficient.

2. CONSPIRACY—*sufficiency of evidence.* A charge of conspiracy to obtain money by false pretenses is not sustained by evidence of overt acts by defendant and his father, private bankers, consisting of unauthorized dealings with promissory notes pledged by defendant as collateral security for a loan to him, by which one of the pledged notes which had been returned to the bank for collection was sold by the father to a customer of the bank, where there is no direct evidence of any conspiracy.

3. CONSPIRACY—*variance between indictment and evidence.* A charge of conspiracy to obtain money by false pretenses is not sustained by proof that defendant and the other alleged conspirator obtained a promissory note, where there is no evidence that any money was obtained by a course of devious and unauthorized dealings with notes pledged as collateral security by defendant and of which he afterwards obtained possession for collection.

4. CONSPIRACY—*sufficiency of instruction as to form of verdict.* In a prosecution for conspiracy after the amendment of June 28, 1919, of the Conspiracy Act, Cahill's Ill. St. ch. 38, ¶ 116, providing for imprisonment in the county jail, an instruction that if the jury find the defendant guilty he may be punished by imprisonment in the penitentiary or may be fined, or both fined and imprisoned, but omitting all reference to imprisonment in the county jail, is contrary to amendment of 1919 and also Cahill's Ill. St. ch. 38, ¶ 781, relative to punishment where imprisonment may be either in the county jail or in penitentiary, with or without fine, and providing that where the jury will not inflict imprisonment in the penitentiary they shall simply find the prisoner guilty and the court shall fix the imprisonment in the county jail.

5. CRIMINAL PROCEDURE—*harmlessness of invited error in instructions.* Error in the People's instructions in a prosecution for conspiracy cannot be complained of by a defendant where instructions given on his behalf and at his request contain the same error.

Error by defendant to the Circuit Court of Whiteside county;

the Hon. NELS A. LARSON, Judge, presiding.  Heard in this court at the October term, 1922.  Reversed and remanded.  Opinion filed March 16, 1923.

JAMES H. CARTWRIGHT, JR., and EDWARD G. INCE, for plaintiff in error.

ROBERT W. BESSE, for defendant in error.

MR. JUSTICE PARTLOW delivered the opinion of the court.

At the October term, 1923, of the circuit court of Whiteside county, the grand jury returned an indictment of two counts against Hugh E. Paddock and George E. Paddock.  The first count charged a conspiracy, on December 23, 1920, to obtain money of the value of $104.17, the property of the Eclipse Lawn Mower Company, a corporation, by false pretenses. The second count charged a conspiracy on the same date to obtain the same money by means and uses of the confidence game.  George E. Paddock was never taken into custody, but the plaintiff in error, Hugh E. Paddock, was convicted under the indictment and sentenced to imprisonment in the penitentiary for two years and fined $1,500.  To review the judgment of conviction, a writ of error has been prosecuted from this court.

The grounds for reversal are that the verdict is not sustained by the evidence, the court improperly ruled on evidence, and improperly instructed the jury. The evidence shows that many years ago George E. Paddock, the father of Hugh E. Paddock, established in Prophetstown, Whiteside county, a private bank, of which George E. Paddock was the sole and only owner.  On September 1, 1895, plaintiff in error, Hugh E. Paddock, who was at that time a little over twenty years of age, became the cashier of the bank and continued as such for over twenty-five years.  In addition

to his duties as cashier he sold life insurance and took notes in payment of the premiums. On July 21, 1920, he sold a policy to Frank Meier and took a note payable to himself for $102.96, due October 2, 1920, which note he indorsed and delivered to the bank. On September 25, 1920, the plaintiff in error borrowed $3,000 of the Eclipse Lawn Mower Company, a corporation, through Henry Adams, its secretary, treasurer and manager, and gave his note therefor, which note was signed by George E. Paddock, as surety. This money was borrowed by plaintiff in error in order that he might pay to the insurance companies, of which he was the agent, premiums which were due from him for insurance sold. As collateral security for the $3,000, the plaintiff in error gave to Adams certain notes, aggregating $3,600, and among them was the Meier note, which at that time was listed upon the books of the bank as one of its assets, as were also some of the other notes which were put up as collateral. George E. Paddock was present when this transaction took place and knew all about it. For this $3,000 Adams gave plaintiff in error a check for $3,000, drawn upon a Chicago bank, where it was placed to the credit of the Prophetstown bank. This was done at the request of the plaintiff in error for the reason, as he told Adams, that he had offered these same notes to another bank and did not want the other bank to know he had obtained this loan from Adams. About December 10, 1920, Adams and the plaintiff in error had a conversation in which it was suggested that as some of these collateral notes were soon to become due, it would probably be best for the notes to be returned to the bank, and for the bank to notify the makers and collect them when due. Adams took the collateral notes to the bank and gave them to the plaintiff in error, who notified the makers that they were due. On December 23, 1920, in response to a notice from the bank, Meier went to the bank and had

a talk with George E. Paddock, in which he asked for an extension of time of payment. The interest was figured and a new judgment note for $104.70 was executed by Meier, due in ninety days with interest after maturity. This note had no payee named in it, and after its execution it was indorsed by George E. Paddock. This renewal note was made without consultation with Adams. Plaintiff in error was present when the note was renewed and knew all about the transaction, but the renewal note was in the handwriting of George E. Paddock and the negotiations for the same were conducted by him. Mrs. Carrie I. Hill, a widow, whose husband had done business with George E. Paddock for a great many years, went to the bank on December 23, 1920, and had a conversation with George E. Paddock in the back room, in which she stated that she had a check for $2,000 and would like to have him invest it for her. He told her he could put the money into notes at seven per cent if that would be all right, and she said it would. She left the check with George E. Paddock and it was cashed. She testified that the plaintiff in error was in the bank at that time, but he was in the other part of the bank, was busy and could not have heard her conversation with his father. The notes which were to be in payment of this $2,000 check were not delivered to Mrs. Hill, but were put in her safety deposit box in the bank. The bank failed on Thursday, December 30, 1920, and in Mrs. Hill's safety deposit box the $2,000 worth of notes were found, and among them was this renewal note of Frank Meier. The books of the bank showed an entry in the handwriting of George E. Paddock made December 25, 1920, transferring this renewal note to the account of Mrs. Hill. Henry Adams testified that he went to the bank on Friday, December 31, 1920, after the bank had failed, and obtained the envelope containing his collateral notes for the $3,000 loan. He took the package to the office of the Eclipse

Lawn Mower Company and checked them over and discovered that the Meier note and one other were missing and he immediately returned to the bank and notified the plaintiff in error of this fact. This is disputed by the plaintiff in error, who testified that he was not in the bank until after 5 o'clock on Friday, December 31, 1920, and did not see Adams at that time. He testified that the notes were not obtained by Adams until Sunday afternoon, January 2, 1921, and that he was not notified of any shortage in the notes until the early part of the following March at a hearing in the bankruptcy matter in which Adams testified this note was missing. He testified that later he was notified by Harry Waite, a lawyer of Prophetstown, that Mrs. Hill had placed this renewal note with a number of others in his hands for collection. Plaintiff in error went to Waite's office, examined the note and then went to the home of his father. His father denied that the note was the Meier note which had been pledged with Adams, and said it was the other Meier note for $100. The evidence shows there were two notes in the bank signed by Meier, one for $104.07 and the other for $100. Mrs. Hill testified that Adams notified her about March 1, 1921, that the renewal note belonged to him. Gladys Paddock, a sister of the plaintiff in error, testified that she was living at home with her father and brother at the time the bank failed and for several months thereafter. She saw her father and brother together every day and heard various discussions between them concerning the Meier note. She could not fix the date of the first conversation, but said it was some weeks after January 1, 1921. The substance of the first conversation was that the plaintiff in error asked his father how it happened that the Meier note was in Mrs. Hill's possession. His father said he did not think it was in her possession, and the plaintiff in error replied that he knew it was in her possession because he had seen it.

The father said there was more than one Meier note, and plaintiff in error must be mistaken, and it was not the one pledged with Adams. At one time the father stated that the only way he could explain the note being in the possession of Mrs. Hill was that it might have been misfiled and that it was a mistake. In answer to the question as to whether or not these discussions were friendly, she said they were not at all friendly, they were not infrequently interspersed with profanity.

At the close of the evidence on behalf of the People, the plaintiff in error moved to strike from the record all testimony concerning the obtaining of money from the Eclipse Lawn Mower Company, on September 25, 1920, for the reason that the indictment charged a conspiracy to obtain the money on December 23, 1920. A motion was made to strike all testimony concerning the obtaining of the notes from the Eclipse Lawn Mower Company on December 10, 1920, because the indictment charged a conspiracy to obtain money; also to strike all testimony concerning the obtaining of money from Mrs. Hill on December 23, 1920, for the reason that the indictment charged a conspiracy to obtain the money of the Eclipse Lawn Mower Company and not the money of Mrs. Hill. The court allowed the first motion to strike the testimony concerning the obtaining of money from the Eclipse Lawn Mower Company on September 25, 1920, but later reversed this ruling on that motion and denied all of them.

Both counts of the indictment charge a conspiracy on December 23, 1920, to obtain the money of the Eclipse Lawn Mower Company. The allegation as to the date is not material and any date, within the statute of limitations, might have been sufficient. It is apparent, not only from the date alleged in the indictment but it is also apparent from the evidence, that the conspiracy sought to be established was the

one supposed to have been formed relative to the transaction on December 23, 1920, and not with reference to the transaction on September 25, 1920. As far as the latter transaction was concerned, the evidence shows it was completed on September 25, and nothing further was necessary to be done. There was no fraud in that transaction because of the fact that the Meier note belonged to the bank, for the reason that the notes were put up as collateral security in the presence, and with the full knowledge of George E. Paddock, the owner, and he signed the note which they were put up to secure. He was bound by this transaction and no fraud could be charged, because the notes had been assigned by the plaintiff in error to the bank. The notes which were to be put up to Adams on September 25, as collateral, were in fact put up and delivered to Adams, together with the $3,000 note which they were to secure. There was no fraud or conspiracy shown as to this transaction. If there was any conspiracy it was after this date. On December 10, 1920, there was a conversation between Adams and plaintiff in error. Just which one suggested that the bank collect these collateral notes is not material. As a matter of fact, these notes belonged either to the bank or the plaintiff in error, and each was interested in their collection and renewal, as was also the corporation holding them. There was nothing unusual or criminal in their being delivered to the plaintiff in error or to the bank for collection. The fact that George E. Paddock renewed the Meier note without consulting Adams was not out of the usual course of business. He was interested in the payment, or the renewal, of that note, and the note which he took in renewal was a judgment note while the original note had no judgment clause. For that reason the renewal note was just as good, if not a little better, than the original note. The real conspiracy, if there was one, must be based upon the fact that this Meier renewal

note of December 23, 1920, was not placed with the other collateral notes which had been delivered to Adams, but was in fact sold to Mrs. Hill, was later found in her safety deposit box and was transferred to her upon the books of the bank. The undisputed evidence is that Mrs. Hill dealt with George E. Paddock alone at the time her $2,000 check was deposited and these notes were transferred to her. The undisputed evidence is that she had her dealings with him, and while the plaintiff in error was in the bank, he had nothing to do with the transaction and did not hear what was said. The transfer on the books of the bank was in the handwriting of George E. Paddock. The evidence on behalf of the People does not, in any manner, connect the plaintiff in error with the transfer of the note to Mrs. Hill. On the other hand, the evidence on behalf of the plaintiff in error showed that he did not know of this transaction and did not take any part in it at the time it was made, that he did not know this note was in Mrs. Hill's hands until the next March, and when he found it was in her possession, he immediately went to his father's house and asked for an explanation. The evidence undoubtedly showed that George E. Paddock put this note in Mrs. Hill's box and transferred it to her account, but the evidence showing, or even tending to show, a conspiracy between George E. Paddock and the plaintiff in error to illegally transfer this note, or to show that plaintiff in error had anything to do with such transfer, either individually or in connection with his father, is very meager and unsatisfactory. The law is well settled that the proper procedure in a conspiracy case is to show the conspirators first and then prove the overt acts of the conspiracy in furtherance thereof. Sometimes this cannot be conveniently done and it is within the discretion of the court to permit the proof of the overt acts to be made in the first instance, either upon the theory that the definite conspiracy will then and there

be proved by direct testimony, or that the acts of the parties will be so conclusive that no reasonable doubt of such conspiracy can be entertained. In other words, the proof of the conspiracy may be made in either of two ways, first, by direct testimony thereof, or second, by overt acts which establish the conspiracy beyond a reasonable doubt. *Spies v. People,* 122 Ill. 1; *Ochs v. People,* 124 Ill. 399; *People v. Darr,* 262 Ill. 202. There is no direct evidence of any kind establishing a conspiracy between the plaintiff in error and his father, George E. Paddock, and we do not think the evidence on behalf of the People, consisting of overt acts between the parties, is sufficient to establish such a conspiracy by such a degree of proof as the law requires.

Even if the evidence was sufficient to establish beyond a reasonable doubt a conspiracy between the plaintiff in error and his father to unlawfully obtain this note, there is another fatal defect in this record. The charge in the indictment is that they conspired to obtain the money of the Eclipse Lawn Mower Company. They are not charged with attempting to obtain the note of that corporation. It is an elementary principle of law that in order to sustain a conviction, the defendant must be proven guilty beyond a reasonable doubt, by the evidence, in the manner and form as charged in the indictment. The defendant cannot be charged with one offense and convicted of another offense entirely different from the one charged. If he is charged with a conspiracy to obtain money, he must be convicted of a conspiracy to obtain money, and proof that he obtained notes, checks, county orders, or other articles of personal property, and did not obtain money, will not be sufficient to sustain the charge of obtaining money. *Goodhue v. People,* 94 Ill. 37; *Weimer v. People,* 186 Ill. 503; *Lory v. People,* 229 Ill. 268; *People v. Warfield,* 261 Ill. 293; *People v. Cronkrite,* 266 Ill. 438. There is no proof that money

was obtained from the Eclipse Lawn Mower Company. Even if the transaction of September 25, 1920, be made the basis of this conspiracy, the evidence shows that Adams gave the plaintiff in error a check on a Chicago bank for $3,000, which was subsequently placed to the credit of the bank of Prophetstown. If the transaction of December 23, 1920, with Adams, is made the basis of the charge, the evidence shows that neither check nor cash passed hands, but there was simply a renewal of the Meier note and it was converted to the use of George E. Paddock, or George E. Paddock and the plaintiff in error. If the transaction of December 23, 1920, with Mrs. Hill, is made the basis of the conspiracy, that charge is not alleged in the indictment, and no money was passed, but the transaction was by transfer of notes and checks. In any view taken of this case, a charge of conspiracy to obtain the money of the Eclipse Lawn Mower Company was not established by the evidence. The second instruction offered by the plaintiff in error, and refused by the court, announced the above rule of law and should have been given for the reason that it was not fully covered by any other instruction given.

In the instruction as to the form of the verdict, the court told the jury that if they found the plaintiff in error guilty, they should fix his punishment at imprisonment in the penitentiary not exceeding five years, or by a fine not exceeding $2,000, or by both fine and imprisonment. It is insisted that this instruction was erroneous. Prior to July 1, 1919, the penalty for conspiracy was imprisonment in the penitentiary not exceeding five years, or a fine not exceeding $2,000, or both. As the law then stood the provisions of the parole law did not apply. *People v. Moses*, 288 Ill. 281. Desiring to bring all penalties, except those specifically excepted by the Parole Act, within the terms of the parole law, the Fifty-first General Assembly passed an act amending a number of sections of the

Criminal Code, by fixing a minimum imprisonment of one year. Laws of 1919, page 428. Among the sections amended was what was known as section 46 of the Conspiracy Act [Cahill's Ill. St. ch. 38, ¶ 116], and the penalty provided by the amendment is as follows: ''Every person convicted of conspiracy at common law shall be fined not exceeding $2000.00, or shall be imprisoned in the county jail not exceeding one year, or shall be imprisoned in the penitentiary for a term of not less than one year and not exceeding five years, or may be so fined and so imprisoned in the county jail or penitentiary.'' At the same session, section 46 was again amended by adding a paragraph exempting farmers and others from the provisions of the section. Because of the confusion growing out of these two amendments, the compiler of Hurd's Statutes has carried both sections (page 1068) into the revisions of 1921. In *People v. Lloyd*, 304 Ill. 23, the history of these two amendments and the effect of each are fully considered. On pages 101, 102 and 103, it is held that both amendments are in full force and effect, and that when a jury is instructed as to the form of the verdict, it should be in accordance with the Act of June 28, 1919 (Laws of 1919, page 428). Paragraph 781 of the Criminal Code, Cahill's Ill. St. ch. 38, page 1296, provides that when the punishment may be either by imprisonment in the penitentiary or confinement in the county jail, with or without fine, if the jury will not inflict a punishment of imprisonment in the penitentiary, they shall simply find the accused guilty, and the court shall fix the time of confinement in the jail, or fine, or both, as the case may require. The form of the verdict, as given in this case, was not in accordance with the 1919 amendment of the statute with reference to conspiracy, and was not in accordance with the provisions of paragraph 781 of the Criminal Code. It made no reference to imprisonment in the county jail, and the jury were not informed

that the punishment could be by imprisonment in the county jail, but they were told that the punishment must be either imprisonment in the penitentiary, or by fine, or by both. For this reason the instruction as given was erroneous.

Complaint is made that ten instructions were given for defendant in error, and the first, second, third and fifth are upon the subject of reasonable doubt. The repetition of instructions on the subject of reasonable doubt has been criticized in many cases. *People v. Sawhill,* 299 Ill. 393. The fifth instruction does not define a reasonable doubt and makes no reference to a reasonable doubt, but the other three instructions are on that subject. On the other hand, plaintiff in error's seventeenth, nineteenth, twenty-second and twenty-third instructions are on that subject and for that reason, if the counsel for the People violated the rule with reference to reasonable doubt, it was also violated by counsel for plaintiff in error, and he will not be heard to complain of an error of which he himself is guilty. It is also insisted that the defendant in error's ninth instruction singles out the plaintiff in error and calls special attention to him and is in violation of the rule announced in *People v. Sawhill, supra.* It is sufficient to say that the plaintiff in error's twenty-fifth instruction is subject to this same criticism. Other objections are made to rulings on evidence and instructions, but we do not consider it necessary to pass on each of them specifically, as the questions already considered must work a reversal of the judgment.

We are asked to reverse the judgment without remanding the case, but we are of the opinion that this should not be done.

For the errors indicated the judgment will be reversed and the case remanded.

*Reversed and remanded.*