THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. RICKEY HALL, Defendant-Appellant.

First District (1st Division)   No. 1—95—0304

Opinion filed August 4, 1997.—Rehearing denied September 5, 1997.

Rita A. Fry, Public Defender, of Chicago (Bruce Landrum, Assistant Public Defender, of counsel), for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb, Veronica Calderon, and McRay Judge III, Assistant State's Attorneys, of counsel), for the People.

JUSTICE O'BRIEN delivered the opinion of the court:

Following a bench trial, defendant, Rickey Hall, was found guilty of second-degree murder and aggravated battery while using a deadly weapon. The court sentenced defendant to concurrent terms of 15 years' imprisonment for second-degree murder and 5 years' imprisonment for aggravated battery. Defendant appeals, contending: (1) the trial court erred by convicting him of a crime not charged in the indictment; (2) he was not proved guilty beyond a reasonable doubt; (3) the trial court erred by admitting hearsay evidence; and (4) his 15-year sentence was excessive. We affirm.

At trial, Eugene Chaney testified that the deceased was his eight-year-old son, Lazaric Eggleston, whom he last saw alive about 8 p.m. on October 1, 1993. The parties stipulated that Doctor Lifschultz would testify he performed an autopsy on Lazaric Eggleston on October 2, 1993, and found that Lazaric died as a result of a gunshot wound to the chest.

Erma Shields testified that on the evening of October 1, 1993, Kenny Eggleston (hereinafter Eggleston) drove her, Leslie Dean, and Lazaric Eggleston to Joey's Food and Liquor. After Eggleston parked the car in the parking lot, defendant approached the driver's side window and told Eggleston that he had made his (defendant's) daughter bump her head. Eggleston exited the car and apologized to defendant. Defendant stated two more times that Eggleston had made his daughter bump her head, and then defendant reached in his pants and pulled out a gun.

Shields testified that after defendant pulled out the gun, "the driver's side window shattered" and she was sprayed with glass. Shields jumped out of the car and saw defendant walking toward the rear of the car. Thinking that Eggleston had been shot, Shields ran to the driver's side to look for Eggleston on the ground. Eggleston was not there, and Shields then ran back to the passenger side and told Lazaric to get out of the car. When Lazaric failed to respond, she picked him up and noticed blood on his back. As she exited the car with Lazaric, a police officer took him out of her arms.

Shields testified that, on November 4, an officer showed her some color photographs from which she identified defendant. Later that evening, Shields viewed a lineup from which she selected defendant. On cross-examination, Shields testified she first viewed a photo array of black and white photos, but she was unable to identify defendant therein because the photographs were too dark. On redirect examination, Shields testified she could not identify defendant from the black and white photographs because of their poor quality, but she reiterated that she had no trouble identifying defendant from the color photographs or in the lineup.

Leslie Dean's testimony was substantially similar to that of Shields regarding how defendant approached Kenny Eggleston's car in the parking lot of the liquor store. Dean testified that, after defendant told Eggleston he had made defendant's daughter bump her head, "the glass shattered" and then she got out of the car and ran. Dean later returned to the scene and saw Lazaric face-down on the ground. Dean subsequently identified defendant on November 4, 1993, from some color photographs and in a lineup. On cross-examination, Dean testified that police officers never asked her to look at black and white photographs. On redirect examination, Dean testified she viewed some photographs other than the color photographs, but she was unable to recognize anyone in those photographs because they were not "clear."

Kenny Eggleston testified consistently with Shields and Dean about how he drove to the liquor store and was approached by defendant, who stated that Eggleston had made defendant's daughter bump her head. Eggleston further testified that, after he exited the car, defendant hit him on the right side of the face with a gun and the gun went off. Eggleston ran away but later returned to the scene and saw many police there.

Eggleston testified that on November 4, 1993, he identified defendant from some color photographs and in a lineup. On cross-examination, Eggleston testified he had never been asked to identify defendant from any individual black and white photographs. On redirect examination, Eggleston testified that officers showed him some black and white photographs prior to the color photographs, but he could not identify defendant from the black and white photographs because they were blurry.

Detective Victor Gutierrez testified that, on November 3, 1993, he received a phone call from an anonymous person who stated she had seen on television a police sketch of the person wanted for the Lazaric Eggleston murder. The caller told Gutierrez that defendant was the person in the sketch.

Gutierrez testified he recovered a photograph of defendant and placed it in a photo spread along with photographs of five other persons. Gutierrez showed the photo spread to Shields, Eggleston, and Dean, but they could not identify defendant because the photographs were of bad quality. On November 4, 1993, Gutierrez separately showed Shields, Eggleston, and Dean a photo array containing a color photograph of defendant, and they all identified defendant. Shields, Eggleston, and Dean later identified defendant in a lineup.

The trial court found defendant committed first-degree murder

(720 ILCS 5/9—1(a)(3) (West 1994)) (felony murder), but also found sufficient mitigating evidence to reduce defendant's conviction to second-degree murder. The court further convicted defendant of aggravated battery while using a deadly weapon and sentenced him to 15 years' imprisonment for second-degree murder and a concurrent 5-year term for aggravated battery. Defendant filed this timely appeal.

■ Before addressing the merits of defendant's appeal, we first address an argument raised by the State. The State contends the trial court erred by reducing defendant's first-degree murder conviction to second-degree murder. The State points to section 9—2 of the Criminal Code of 1961, which states a "person commits the offense of second degree murder when he commits the offense of first degree murder as defined in *paragraphs (1) or (2)* of subsection (a) of Section 9—1 of this Code" and either of two mitigating factors is present. (Emphasis added.) 720 ILCS 5/9—2 (West 1994). The trial court here found defendant committed first-degree murder under paragraph (a)(3) of section 9—1 (felony murder). Thus, the State contends section 9—2 was not applicable and the trial court erred in reducing defendant's offense to second-degree murder. Accordingly, the State asks that we remand the cause for the trial court to enter judgment on its finding of guilt for first-degree murder.

We need not address the merits of this argument, because the State is precluded from appealing the trial court's order reducing defendant's conviction to second-degree murder. See 145 Ill. 2d R. 604(a)(1) ("In criminal cases the State may appeal only from an order or judgment the substantive effect of which results in dismissing a charge for any of the grounds enumerated in section 114—1 of the Code of Criminal Procedure of 1963; arresting judgment because of a defective indictment, information or complaint; quashing an arrest or search warrant; or suppressing evidence").

The State tries to circumvent Rule 604 by arguing that the trial court's order reducing defendant's conviction to second-degree murder was void and, thus, reviewable by this court. See *People v. Magnus*, 262 Ill. App. 3d 362, 365 (1994) ("A void judgment, order or decree of a court will be reversed on appeal whenever brought before the court by any means possible in the particular case").

The trial court's order reducing defendant's conviction was voidable, not void, and therefore it cannot be challenged here by the State. In support, we cite *People v. Davis*, 156 Ill. 2d 149 (1993). In *Davis*, defendant was convicted of unlawful possession of cannabis and unlawful possession with intent to deliver cannabis. *Davis*, 156 Ill. 2d at 151-52. The appellate court held that Davis' conviction for

unlawful possession of cannabis was void because it was a lesser included offense of unlawful possession of cannabis with intent to deliver. *Davis*, 156 Ill. 2d at 152-53.

Our supreme court held that defendant's conviction was voidable, as opposed to void:

"Jurisdiction is a fundamental prerequisite to a valid prosecution and conviction. Where jurisdiction is lacking, any resulting judgment rendered is void ***. [Citation.] By contrast, a voidable judgment is one entered erroneously by a court having jurisdiction ***. [Citation.]

* * *

Generally, once a court has acquired jurisdiction, no subsequent error or irregularity will oust the jurisdiction thus acquired. Accordingly, a court may not lose jurisdiction because it makes a mistake in determining either the facts, the law or both. ***

* * *

*** [J]urisdiction over the defendant, as well as over the subject matter, was proper. The court had authority to enter conviction and sentence on either of the charged offenses [citations], and judgment on both was, merely, error. Nevertheless, the court's erroneous judgment was insufficient to effect divestiture of the court's jurisdiction. The judgment was, therefore, voidable ***." *Davis*, 156 Ill. 2d at 155-58.

Similarly, in the present case, the trial court had jurisdiction over defendant as well as the subject matter. The court had authority to enter conviction and sentence, and the court's order reducing defendant's conviction to second-degree murder was error. However, the court's erroneous judgment did not divest it of jurisdiction, and therefore the judgment was voidable, not void.

The State contends *People v. Wade*, 116 Ill. 2d 1 (1987), compels a different result. In *Wade*, our supreme court held that where the trial court gave defendant a lesser sentence than mandated by statute, that sentence was void. *Wade* is factually inapposite to the present case, which deals with the allegedly improper reduction of first-degree murder to second-degree murder, not the imposition of a lesser sentence than mandated by statute. Further, *Wade* did not draw a distinction between a voidable offense and a void offense. *Davis*, written after *Wade*, does draw such a distinction and, in our view, is the better reasoned case. In accordance with *Davis*, we find the trial court's judgment reducing defendant's conviction to second-degree murder was voidable. Accordingly, since the order reducing defendant's conviction was not void and did not fall under Rule 604(a)(1), the order cannot be challenged here by the State. Therefore, we decline the State's request to remand this cause for the trial court to enter judgment on its finding of guilt for first-degree murder.

■ We proceed to address defendant's arguments on appeal. First, defendant argues the trial court erred by convicting him of a crime not charged in the indictment. Specifically, the trial court convicted defendant of felony murder, with aggravated battery while using a deadly weapon upon Kenneth Eggleston as the underlying felony. The court then found sufficient mitigating factors to reduce defendant's conviction to second-degree murder. However, the indictment never charged defendant with felony murder predicated upon the underlying felony of aggravated battery while using a deadly weapon upon Kenneth Eggleston. Instead, the indictment only charged defendant with felony murder predicated upon the underlying felony of (a) aggravated battery causing permanent disfigurement to Kenneth Eggleston, (b) aggravated battery with a firearm upon Kenneth Eggleston, and (c) aggravated battery upon a public way upon Kenneth Eggleston.

We find no reversible error. The appropriate standard of review is whether the indictment apprised defendant of the precise offense charged with sufficient specificity to prepare his defense and protect him from double jeopardy. *People v. Allen*, 56 Ill. 2d 536, 542-43 (1974). The indictment sufficiently apprised defendant that he was charged with killing Lazaric Eggleston when he (defendant) hit Kenneth Eggleston with a gun, and the gun fired, striking Lazaric. Accordingly, we fail to see how the indictment misled defendant in preparing his defense. Further, since the indictment charged defendant with the first-degree murder of Lazaric Eggleston, if the trial court had acquitted defendant he could not have been charged and tried again for the murder of the same individual. *People v. Allen*, 56 Ill. 2d at 543. Therefore, the language of the indictment was sufficient to protect defendant from double jeopardy.

■ Next, defendant argues his aggravated battery of Kenneth Eggleston was not a forcible felony and therefore it could not serve as the predicate offense for felony murder. The felony murder statute provides:

"A person who kills an individual without lawful justification commits first degree murder if, in performing the acts which cause the death:

\* \* \*

(3) he is attempting or committing a forcible felony other than second degree murder." 720 ILCS 5/9—1(a)(3) (West 1994).

Forcible felony is defined in relevant part as "aggravated battery resulting in great bodily harm or permanent disability or disfigurement and any other felony which involves the use or threat of physical force or violence against any individual." 720 ILCS 5/2—8 (West 1994).

Defendant contends his aggravated battery was not a forcible felony because it did not result in great bodily harm or permanent disability or disfigurement to Kenneth Eggleston. However, defendant's aggravated battery of Eggleston certainly involved the use or threat of physical force or violence against Eggleston. Accordingly, the aggravated battery was a forcible felony that could properly serve as the predicate offense for a felony murder conviction.

■ Next, defendant argues he was not proved guilty beyond a reasonable doubt of felony murder and aggravated battery while using a deadly weapon. We note that defendant does not argue the correctness of the trial court's decision to reduce his conviction to second-degree murder. Defendant's argument is that, since the State failed to prove him guilty of felony murder and aggravated battery while using a deadly weapon, the trial court should have acquitted him. Accordingly, we address defendant's arguments concerning whether the State proved him guilty of felony murder and aggravated battery while using a deadly weapon; we do not discuss the trial court's decision to reduce his conviction.

When presented with a challenge to the sufficiency of the evidence, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. Oaks*, 169 Ill. 2d 409, 457-58 (1996).

Defendant contends the State did not prove him guilty of felony murder because there was no evidence he committed the predicate felony of aggravated battery with a firearm. Defendant argues that aggravated battery with a firearm requires defendant to knowingly or intentionally discharge a firearm, causing injury to another person. 720 ILCS 5/12—4.2 (West 1994). Here, though, the trial court found defendant did not knowingly or intentionally discharge the firearm that caused the death of Lazaric Eggleston.

However, as discussed above, the record clearly indicates the trial court found defendant committed felony murder with *aggravated battery with a deadly weapon* as the underlying felony. To commit aggravated battery with a deadly weapon, defendant must commit a battery while using "a deadly weapon other than by the discharge of a firearm." 720 ILCS 5/12—4(b)(1) (West 1994). At trial, Kenneth Eggleston testified defendant intentionally hit him in the face with his gun. Such conduct satisfies the definition of aggravated battery with a deadly weapon. See *People v. Deskin*, 60 Ill. App. 3d 476, 481 (1978) (a gun used as a club is considered a deadly weapon).

■ Defendant questions the identification of him by Eggleston, Erma Shields and Leslie Dean. The circumstances to be considered in

evaluating an identification include: (1) the opportunity the victim had to view defendant at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of defendant; (4) the level of certainty demonstrated by the victim at the identification confrontation; (5) the length of time between the crime and the identification confrontation. *People v. Slim*, 127 Ill. 2d 302, 307-08 (1989).

■ Here, the evidence indicates Eggleston, Shields, and Dean viewed defendant under circumstances permitting a positive identification of him. Eggleston testified he was face to face with defendant when defendant hit him in the right side of the face with a gun and the gun went off. Shields and Dean, who were passengers in Eggleston's car at that time, testified they were able to see defendant confront Eggleston. Shields further testified she saw defendant pull out a gun, after which the driver's side window shattered. Moreover, about one month later, Eggleston, Shields, and Dean each individually identified defendant from some color photographs and in a lineup.

Defendant points out that Eggleston, Shields, and Dean testified during redirect examination that they had been unable to identify defendant from some earlier black and white photographs shown to them. However, Eggleston, Shields, and Dean testified they had been unable to identify defendant from the black and white photographs because those photographs were of poor quality. The trial court obviously accepted that explanation, finding "this issue about the black and white photo or color photo is not an issue for me that affects the strength of the identifications by the three witnesses. I find that the testimony here in court and the identifications that were made by the witnesses *** are sufficient to show me that [defendant] was the man who was in the parking lot that night with them regarding the events that transpired that ended up in the death of Lazaric Eggleston."

Defendant further questions the credibility of Eggleston, Shields, and Dean. However, the trial court found the three witnesses "to be credible," and we will not substitute our judgment for the trier of fact's credibility determination. *People v. Goosens*, 262 Ill. App. 3d 722, 728 (1994). After viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found defendant intentionally hit Kenneth Eggleston in the face with a gun, which then fired, killing Lazaric Eggleston. Accordingly, the evidence was sufficient to convict defendant of felony murder and aggravated battery while using a deadly weapon.

■ Defendant argues that the shooting was accidental or, at most,

reckless, and therefore involuntary manslaughter is the most serious crime for which the trial court should have convicted him. We disagree. Felony murder is premised on strict liability for one who kills or is responsible for a killing during the commission of a felony. *People v. McCarroll*, 168 Ill. App. 3d 1020, 1023 (1988). Where, as here, death resulted from recklessness or even an accident during the commission of the underlying felony, defendant is still guilty of felony murder. *McCarroll*, 168 Ill. App. 3d at 1023.

■ Next, defendant argues the trial court erred by admitting Detective Gutierrez' testimony regarding the anonymous caller's statement identifying defendant as the offender depicted in the sketch shown on television. Defendant contends such testimony was inadmissible hearsay. We disagree, as Gutierrez' testimony was admitted only to show the investigative steps taken by him. See *People v. Simms*, 143 Ill. 2d 154, 174 (1991).

■ Finally, defendant argues the trial court abused its discretion by sentencing him to 15 years in prison for second-degree murder. We disagree. The trial court read the presentence report and heard evidence in mitigation that defendant supported his mother and did not intend to take the life of Lazaric Eggleston. In aggravation, the State informed the trial court that defendant had received six years' imprisonment for burglary in 1982 and that, at the time of the Lazaric Eggleston murder, defendant was on probation for the aggravated battery of defendant's brother-in-law. Defendant committed the aggravated battery against his brother-in-law after the two men argued because defendant had hit the brother-in-law's nine-year-old child. Defendant stabbed the brother-in-law in the stomach, causing him to spend 11 days in the hospital.

The court stated:

"[T]here's no doubt looking at [defendant's] background, which is contained in the presentence investigation, that he has committed enough crimes for me to know that his idea about how society ought to be conducted is that he can do what he wants when he wants.

And not only has he served six years previously in the penitentiary, but this incident regarding his brother-in-law means that he doesn't even care if it's family or strangers. And that his use of both weapons and violence is sufficient for me to know that [defendant] is a danger to the community. And as a result he deserves and I'm going to impose the maximum sentence on second degree murder, which is 15 years."

We find no abuse of discretion.

For the foregoing reasons, we affirm the trial court. As part of our judgment, we assess defendant $150 as costs for this appeal.

Affirmed.

BUCKLEY and GALLAGHER, JJ., concur.