THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. TAIWAN M. DAVIS, Defendant-Appellant.

Fifth District No. 5—99—0371

Opinion filed December 20, 2002.

Daniel M. Kirwan and E. Joyce Randolph, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

William Haine, State's Attorney, of Edwardsville (Norbert J. Goetten, Stephen E. Norris, and Sharon Shanahan, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE CHAPMAN[1] delivered the opinion of the court:

On October 1, 1998, Taiwan M. Davis (defendant) was charged by way of an amended indictment with two counts of murder: (1) first-degree murder (720 ILCS 5/9—1(a)(2) (West 1998)) and (2) felony murder (720 ILCS 5/9—1(a)(3) (West 1998)) predicated upon mob action (720 ILCS 5/25—1(a)(1) (West 1998)). During the jury-instruction conference, defense counsel tendered an involuntary manslaughter instruction that the court allowed as an alternative to first-degree murder (count I). The State then moved to nol-pros count I over defendant's objection, leaving the jury to decide only whether

---

[1]Justice Charles Chapman participated in oral argument. Justice Melissa Chapman was later substituted on the panel and has read the briefs and listened to the audiotape of oral argument.

defendant was guilty of felony murder (count II). The court then declined to give the involuntary manslaughter instruction because it was not a lesser-included offense of felony murder premised on mob action. On January 22, 1999, the jury convicted defendant of felony murder, and he was later sentenced to 20 years' imprisonment. Defendant now appeals his conviction, claiming that the circuit court erred in refusing to instruct the jury on involuntary manslaughter. We affirm.

## I. BACKGROUND

On August 10, 1998, Richard Skelton, his younger brother Fred Skelton, his daughter Shelly Garrett, Shelly's friend Jill Walter, his son Jason Skelton, and Jason's girlfriend Dawn Herrin were drinking at several bars in Madison County, Illinois. Later that evening Richard Skelton went home and discovered that a television he had recently purchased was missing. Believing that either his girlfriend or his sister had traded the television for crack cocaine, he telephoned his brother Fred Skelton and asked that Fred take him to a specific block in Alton, Illinois, so that he could attempt to recover the television. Richard and Fred Skelton were accompanied by Jason Skelton, Dawn Herrin, Jill Walter, and Shelly Garrett. The group drove to Alton in two separate cars.

Upon arriving at the 1100 block of East Seventh Street in Alton around midnight, Richard Skelton, along with his accompanying friends and family, began knocking on doors in the area and inquiring whether anyone had seen a stolen television in the neighborhood. In their door-to-door search, Richard and Fred Skelton asked defendant, and others with defendant, if they had seen a lady who had stolen a television and sold it for "crack." Defendant and his companions responded to the Skeltons' inquiry in the negative, and the Skeltons continued their door-to-door search. The Skeltons' search eventually brought them to Tim Lee's house. Several black men were sitting on the porches of the duplex apartments in this area on the 1100 block of East Seventh Street. Tim Lee objected to the Skeltons' inquiries and told them to get off of his property. The men who had been on the porches, and others from across the street, approached the Skeltons and told them that they were in the wrong neighborhood to make accusations. One of the men hit Fred Skelton from behind, knocking him to the ground and rendering him unconscious for 20 to 30 seconds. A crowd of 10 to 20 people then attacked Richard Skelton, who laid on his back in the street without fighting back. After someone said the police were coming, the attackers fled.

At defendant's trial, Detective Golike of the Alton police depart-

ment testified that after he arrived at the scene, he was assigned to canvas the area in an effort to locate possible witnesses or suspects. Detective Golike spoke with defendant at Lisa Haynes' house, which was across the street from where the altercation occurred, and he asked defendant whether he had seen an altercation in the street. Defendant informed Detective Golike that he had been inside Lisa Haynes' duplex at the time and did not see the altercation. Detective Golike testified that he also asked defendant if he would be willing to go to the police station to be interviewed. Detective Mark Dorsey testified that at the Alton police station shortly after the incident he interviewed defendant as a possible witness. Detective Dorsey testified that defendant was not under arrest at the time of the questioning and that defendant had been brought to the police station by family members. Detective Dorsey testified that defendant told him that he was inside a friend's house when he heard a commotion outside. Defendant told Detective Dorsey that he had looked out the window of the residence and saw a group of white people across the street yelling and arguing with Tim Lee but that he did not see any fighting.

At approximately 6 a.m. the next morning, defendant was brought back to the police station by a patrol officer for another interview. Detective Golike testified that he reinterviewed defendant at the Alton police station and took a written statement from defendant after reading him his constitutional rights. Detective Golike confronted defendant with information that led police to believe that he had been involved. Detective Golike testified that after denying involvement in the incident, defendant ultimately admitted that he was involved. Detective Golike testified that defendant claimed he had initially lied to Detective Dorsey because he was afraid and that defendant admitted that he had in fact beaten the victim three or four times with a broomstick. Defendant then provided a signed statement.

Defendant's statement was admitted into evidence at his trial as an exhibit. Defendant's statement recited that he knew that he was not the only one responsible for beating up "this white guy" but that he was the one who had hit him with the broom handle. Defendant further stated that when the fight started, he got up and ran across the street to the fight. Defendant stated that he already had the broomstick in his hand and that he got excited and wanted to "get in it." Defendant admitted that he had started hitting the victim with the broomstick and that he recalled hitting him twice on the head but he stated that he did not really mean to hit him there. Defendant said that he meant to hit the victim on his body but that because the victim kept moving around, it was hard to hit him in the right place. Defendant indicated that he was sure that he hit the victim three or

four times and that one or two of those times were on his body somewhere.

Shelly Garrett, Richard Skelton's daughter, testified that at the time they were walking down the street in their search for the television, some people on a porch told them that they ("us white people") were in the wrong neighborhood. Shortly after that comment, approximately 10 men started coming off of the porches. She testified that six to eight people walked across from the other side of the street and surrounded her, her father, and her uncle, Fred Skelton. She noted that defendant was one of the persons who walked from across the street to surround them. Shelly Garrett testified that after the attack began, she was approximately 10 feet away from her father when four or five different people hit her and knocked her to the ground. She identified defendant as one of those in the front of the group attacking her father, and she said that defendant was hitting him with a broomstick. Defendant was raising the broomstick over his shoulder and hitting her father with it, and at the time there were no other people between defendant and her father.

Defendant testified in his own defense. He testified that he was across the street at a friend's house when the Skeltons were in Tim Lee's yard. He testified that he went across the street after the fight "broke out" and that he had a stick, or broom handle, in his hand at the time. Defendant recalled that people from the crowd were kicking and jumping on Richard Skelton. Defendant testified that once he entered the crowd of people attacking Richard Skelton, he swung the stick into the crowd, trying to hit Skelton, but that he did not, however, think that he hit him with the stick.

At the jury-instruction conference, defense counsel tendered instructions on involuntary manslaughter. The court indicated that it would give the instructions as an alternative to the knowing-murder charge in count I of the amended indictment. The State then moved to dismiss count I, which alleged that defendant acted while knowing that his acts created a strong probability of death or great bodily harm, and elected to proceed to a verdict only on the felony-murder charge in count II. Defense counsel objected to the dismissal of count I of the amended indictment and characterized the dismissal as a tactic employed by the State to deprive defendant of his right to involuntary manslaughter instructions. The court granted the motion and declined to give the involuntary manslaughter instructions, on the ground that involuntary manslaughter was not a lesser-included offense of felony murder predicated upon mob action. The jury was instructed that in order to find defendant guilty of felony murder, it had to find that he had acted knowingly in committing the offense of mob action. The

jury returned a verdict of guilty, and defendant was sentenced to the minimum term of 20 years' imprisonment. Defendant appeals.

## II. ANALYSIS

Defendant argues that the trial court committed reversible error when it refused to give the tendered instructions on involuntary manslaughter after the State dismissed the knowing-murder charge and chose to proceed to a verdict only on the felony-murder charge. Defendant argues that his actions were reckless and that involuntary manslaughter is a lesser-included offense of felony murder. We disagree. Though defense counsel objected at the trial to the State's dismissal of count I, defendant does not argue this issue on appeal.

■ The trial court's refusal to issue a tendered jury instruction is reviewed under an abuse-of-discretion standard. *People v. Kidd*, 295 Ill. App. 3d 160, 167, 692 N.E.2d 455, 460 (1998). The trial court must exercise its discretion in deciding whether the evidence requires a manslaughter instruction. *People v. Miner*, 46 Ill. App. 3d 273, 281, 360 N.E.2d 1141, 1147 (1977). An instruction on a lesser-included offense is not required where the evidence rationally precludes such an instruction. *People v. Lopez*, 245 Ill. App. 3d 41, 47, 614 N.E.2d 329, 334 (1993), *aff'd on other grounds*, 166 Ill. 2d 441, 655 N.E.2d 864 (1995); *People v. Arnold*, 218 Ill. App. 3d 647, 652, 577 N.E.2d 1355, 1360 (1991); *People v. Sanders*, 168 Ill. App. 3d 295, 305, 522 N.E.2d 715, 723 (1988). Where the evidence is sufficient for a conviction on the greater offense, it is not reversible error to instruct only on that offense. *People v. Fonville*, 158 Ill. App. 3d 676, 685, 511 N.E.2d 1255, 1262 (1987).

■ Defendant was charged with felony murder. Section 9—1(a)(3) of the Criminal Code of 1961 provides, "A person who kills an individual without lawful justification commits first[-]degree murder if, in performing the acts which cause the death[,] *** he is attempting or committing a forcible felony other than second[-]degree murder." 720 ILCS 5/9—1(a)(3) (West 1998). The amended indictment alleged that the predicate offense supporting the felony murder was felony mob action, a forcible felony satisfying section 9—1(a)(3). Section 25—1(a)(1) of the Criminal Code of 1961 provides, "Mob action consists of *** [t]he use of force or violence disturbing the public peace by 2 or more persons acting together and without authority of law." 720 ILCS 5/25—1(a)(1) (West 1998). Defendant correctly points out that no mental state is prescribed by the statute and that, thus, mob action may be committed intentionally, knowingly, or recklessly. See 720 ILCS 5/4—3(b) (West 1998). Further, defendant notes that a charge of felony murder includes the intent of the forcible felony serv-

ing as the predicate for the charge. Defendant also points out that there is an apparent conflict in the law on whether a forcible felony committed other than knowingly or intentionally may serve as the predicate for a felony-murder charge. See *People v. Land*, 169 Ill. App. 3d 342, 523 N.E.2d 711 (1988); *People v. Sandy*, 188 Ill. App. 3d 833, 544 N.E.2d 1248 (1989); see also *People v. Hall*, 291 Ill. App. 3d 411, 683 N.E.2d 1274 (1997); *People v. McCarroll*, 168 Ill. App. 3d 1020, 523 N.E.2d 150 (1988). However, we need not decide such questions because the instructions provided to the jury in this case directed the jury that in order to find defendant guilty of mob action, it must find that he acted knowingly. Nevertheless, defendant argues that he acted recklessly and was thus entitled to involuntary manslaughter instructions.

Defendant argues that the jury could have found from the evidence that he acted recklessly, based on his testimony that he got "caught up in the moment." Defendant argues that Richard Skelton died from a cardiac arrhythmia brought on by the stress of the beating and that the jury might have believed that he could not have known that death would be practically certain to occur from a beating such as the one inflicted upon Richard Skelton. We find this argument unpersuasive.

■ Intent can be established by proof of surrounding circumstances, including the character of the assault, the use of a deadly weapon, and other matters. *People v. Mitchell*, 209 Ill. App. 3d 562, 569, 568 N.E.2d 292, 297 (1991). Certain factors may suggest whether a defendant acted recklessly and whether involuntary manslaughter instructions are appropriate, including: (1) a disparity in size and strength between the defendant and the victim, (2) the brutality and duration of the beating and the severity of the victim's injuries, and (3) whether a defendant used his bare fists or a weapon. *People v. DiVincenzo*, 183 Ill. 2d 239, 250-51, 700 N.E.2d 981, 987-88 (1998). An involuntary manslaughter charge is generally not warranted where the nature of the killing, shown by either multiple wounds or the victim's defenselessness, shows that the defendant did not act recklessly. *DiVincenzo*, 183 Ill. 2d at 251, 700 N.E.2d at 988. Where a mob assembles for the purpose of disturbing the public peace, each member of the mob is responsible for the acts of any member that are performed in carrying out the purpose. *People v. Rudecki*, 309 Ill. 125, 129, 140 N.E. 832, 833 (1923).

■ At the trial, testimony established that defendant was across the street when the fight began, that he already had a broomstick in his hand, and that he then decided to run across the street to join 20 to 30 people in the fight. Further, it was established that defendant intended to hit Richard Skelton with the broomstick, that when the

fight began he wanted "to get in it," that he wanted to help beat up Skelton, that though the members of the mob struggled with each other to get inside the crowd to land blows, defendant kept pushing himself back in, that Richard Skelton was unconscious and not fighting back at the time defendant hit him four or more times with the broomstick, and that defendant left the fight only upon notice that the police might be on their way.

We are unable to find that defendant's actions could have been committed recklessly, in light of defendant's use of a weapon to hit the victim, the fact that defendant acted with a sizeable mob of 20 to 30 people to attack a defenseless victim who did not fight back, was unconscious, and died as a result, and where defendant and the mob ended their attack only upon information that the police might be on their way. The trial court's refusal to allow involuntary manslaughter instructions was a proper use of its discretion where the evidence established that defendant did not act recklessly.

## III. CONCLUSION

For the foregoing reasons, defendant's conviction is affirmed.

Affirmed.

HOPKINS, P.J., and GOLDENHERSH, J., concur.