THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. RONALD SCHICKEL, Jr., Defendant-Appellant.

First District (4th Division)   No. 1—03—0677

Opinion filed March 31, 2004.

Terence P. Gillespie, of Genson & Gillespie, and Marc W. Martin, of Marc Martin, Ltd., both of Chicago, for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb and Judy L. DeAngelis, Assistant State's Attorneys, of counsel), for the People.

JUSTICE GREIMAN delivered the opinion of the court:

The defendant, Ronald Schickel, Jr., was indicted for first and second degree murder, felony murder based upon mob action, and ag-

gravated battery. Prior to trial, the State dismissed all counts against the defendant with the exception of the felony murder charge. After a bench trial, the defendant was found not guilty of felony murder and the predicate felony of mob action, but was found guilty of involuntary manslaughter as a lesser included offense. Consequently, he was sentenced to 4½ years' imprisonment. On appeal, he argues that his conviction should be reversed because involuntary manslaughter is not a lesser included offense of felony murder. Because we find that defense counsel's and defendant's actions before the trial court indicate a waiver of this issue, we affirm.

The facts of this case surround the well-publicized events following two wedding receptions on August 5, 2000, at the William Tell Holiday Inn in Countryside, Illinois. Before the night was over, a chaotic melee involving approximately 25 to 30 guests of both wedding receptions erupted in the hotel lobby. As a result of that mass altercation, many people were seriously injured, and one victim, Michael Chambers, lost his life.

At trial, multiple witnesses were called to relate the events of that evening. The trouble began, it appears, around midnight in and around the hotel lobby and bar. Apparently, the defendant and codefendant, Timothy Brogan[1], along with 10 to 15 other people, were lined up against one of the hallways that led from the lobby to the bar. While other guests would walk past, the individuals in the hall began harassing them, making lewd comments to female guests, and verbally challenging the male guests to fight. During this time, one of the guests told the bartender to call security after he had been called numerous names by the men in the hallway. After hotel security was called to control the situation, codefendant Brogan identified himself to security officers as a Cook County sheriff and asserted that the situation was under control. It was not.

At approximately that time, physical altercations began breaking out in the area outside the bar and near the lobby. According to some witnesses, the situation was "unbelievable." Things in the lobby were smashed, furniture was turned over, and people were crying. One of the wedding guests, Mr. Lange, saw five to eight men on the top of the back of another wedding guest, Mr. Rademacher, who was lying on the ground on his hands and knees. After Mr. Lange realized that Mr. Rademacher was being choked and could not breathe, he attempted to intervene. In response, Mr. Lange was kicked in the face, his glasses

---

[1]Codefendant Brogan was found guilty of four counts of official misconduct and was sentenced to 3½ years in prison. He is not a party to this appeal, but his conviction is the subject matter of a pending appeal, No. 1—03—0829.

split his nose open, and he was tossed toward a windowsill, which cut his head. At that time Mr. Rademacher stood up after being released from the choke hold, and was immediately hit from behind by codefendant Brogan, who slammed him against a wall and held him for approximately 15 seconds. After Mr. Rademacher's wife slapped codefendant and yelled at him while he was holding her husband, the codefendant said, "I'm a cop, my name is Tim, I'm a cop." Codefendant then released Mr. Rademacher from the window and forcibly took him to a bench in the hallway. In response to Mrs. Rademacher's inquiry as to whether codefendant was going to arrest her husband, he said, "No, but if he gets off the bench, I'll kill him."

While this was occurring, Michael Chambers returned through the hotel lobby after he had bought some hamburgers at a nearby White Castle. As he was entering the hotel, the men who were lined up against the wall were still harassing some women. According to testimony, Mr. Chambers attempted to get the women away from the men, telling everyone to "go home." At that point, codefendant Brogan told the victim to "back off motherf-----," and he and the defendant pushed and punched the victim in the face. After the defendant hit Mr. Chambers, Mr. Chambers attempted to flee into the lobby, but he was grabbed by the men in the hallway, who pulled him into the vestibule by his neck, got on top of him, and kicked and beat him.

At that point, security guards who witnessed codefendant Brogan pushing Mr. Chambers attempted to get people off of Mr. Chambers, who was now at the bottom of a pile. While they were able to get him to stand, codefendant Brogan still had him in a headlock, and both tumbled into the vestibule area. Immediately thereafter, Countryside police arrived, and codefendant Brogan again identified himself as a Cook County sheriff. After displaying his badge, he informed the other police officers that the victim should be arrested because he was "fighting with everybody." After codefendant Brogan released Mr. Chambers, the defendant, who was also in the vestibule area, jumped into Brogan's position on top of Mr. Chambers and placed him in a headlock. At that point, defendant was in the vestibule, on top of the victim, choking the victim by his neck as he lay facedown on the ground. Officer Battaglia from the Countryside police said the choker, whom he could not identify, had his arm wrapped around the victim's neck and had him in a choke hold known as the "carotid artery choke," a dangerous and deadly hold if applied improperly, according to Officer Battaglia.

Accepting what codefendant Brogan had told them, the Countryside police then attempted to handcuff the victim and, while doing so, told the choker to release the choke hold. Codefendant Brogan

remained in the vestibule during that time. While the defendant still had Mr. Chambers in a choke hold, the Countryside police told Mr. Chambers that he was under arrest and attempted to handcuff him while he resisted. During this time, Officer Battaglia told the choker to release his hold, but the choker did not comply. Officer Battaglia told the choker once again to release the victim, and then felt the victim fall limp onto his own right arm. The choker stated at that point, "he's out cold." According to Officer Battaglia, Mr. Chambers still appeared to be breathing at the point they had successfully handcuffed him

Tim Fahey, defendant's friend, then pulled the defendant off of Mr. Chambers as he lay on the ground in the vestibule, injured, unconscious and totally immobile. The security officers who were also present helping the Countryside police secure the scene saw the victim in this condition and became concerned because no one was attending to him. The police officers then pulled Mr. Chambers up, and he appeared to be unconscious. Mr. Chambers expired sometime later.

Later that evening, codefendant Brogan told his ex-fiancée and another female wedding guest to find the defendant and get him out of the hotel because "everybody was leaving." When the two women found the defendant, the defendant asked why he had to leave because "he wasn't there, that he didn't know what happened." Defendant then apparently left the hotel approximately one-half hour after choking the victim in the vestibule. Days later, defendant told his friend, Dan O'Rourke, that he burned the suit he was wearing the evening of the wedding and bought another exactly like it. He also told Tim Fahey not to say anything, that Tim did not see him in the vestibule, and he thanked Tim for pulling him off the victim.

After the State rested, the defendant's motion for a directed verdict was denied. Defendant then presented testimony from traffic patrol officer Anthony Jarvis from the Village of Hodgkins, who stated that he had been at the William Tell Holiday Inn on August 6, 2000, at approximately 2:30 a.m. When Officer Jarvis approached the front vestibule, he saw Countryside officers and Mr. Chambers in a "skirmish," and two other people in the corner of the vestibule in the back. Officer Jarvis then attempted to prevent entry into the vestibule, and when codefendant Brogan tried to enter, Jarvis grabbed him by the arm. Brogan then stated, "don't touch me. I'm a f------ Cook County Sheriff." Because Officer Jarvis believed that the other Countryside officers had the situation in control, he walked away from the vestibule to attend to the other fights.

After the defense's presentation of witnesses, both defendants chose not to testify on their own behalf. After the trial court fully

admonished the defendants as to their rights, the trial court then heard closing arguments from both sides. During argument, defense counsel stated:

"MR. KREJCI [Defense Counsel]: And I think its pretty clear in [*People v. Davis*, 335 Ill. App. 3d 1102 (2002)], Judge, that one of the issues is whether or not a lesser included instruction of voluntary manslaughter could be given.

And the Court did an analogy of the issue of recklessness and whether or not there are factors that the Court could look to to determine whether or not the person who's charged acted recklessly instead of knowingly and intentionally committing the mob action for felony murder.

And the Court recognized that there [are] circumstances and that the Court could in fact find that someone during the mob action might be acting recklessly, but without knowledge and intent and then that aspect, it could not be felony murder. It would be somewhat of involuntary manslaughter.

I am not conceding that in this case, Judge, but I think that is what the *Davis* case set forth.

THE COURT: [*Davis*] said that you could, under some circumstances, get involuntary manslaughter as a lesser included offense of felony murder, but not in the case of [the defendant] Davis.

MR. KREJCI: That is correct. And the Court said that certain factors vary; whether or not the defendant used a weapon.

I believe in that case the evidence showed that that person in fact had a weapon, a stick, and the victim was on the ground and nobody was around, continued to beat that person with the stick.

And the Court believed under the factors that it set forth that it was proper for the trial court not to give an involuntary manslaughter instruction but they set forth the perimeters that a Court can look to if in fact the Court would be deciding something to that effect.

\* \* \*

\*\*\* This case is a tragedy, but it's not a murder. And the State has not proven Ronald Schickel guilty of murder.

THE COURT: Let me ask you then. Are you asking the Court to consider a charge other than murder?

MR. KREJCI: Judge, I believe that the State has not proven their case beyond a reasonable doubt against Ronald Schickel.

I am just telling the Court that there are, I don't believe it's a— That the Court has other options.

\* \* \*

I believe the Court has other options to consider and is not precluded—

THE COURT: I am not agreeing or not. Is it your client's request that the Court consider a lesser charge, if there is one? As opposed to your's [*sic*]?

\* \* \*

MR. KREJCI: Judge, the answer to your question, yes. [Co-counsel and I] both spent a great deal of time speaking to Mr. Schickel and we would ask the Court to consider—

THE COURT: It's odd in the circumstance.

Mr. Schickel, are you asking the Court to consider the possibilities of the responsibility of a lesser offense, if there is one, for felony murder?

THE DEFENDANT: Yes sir."

Ultimately, the trial court determined that the defendant was not guilty of mob action. However, in looking to the evidence, the court determined that the defendant's "holding [Mr. Chambers] down, choking him, until the stress showed on [defendant's] face, was, at a minimum, reckless indifference to human life. And he's thus guilty and I so find of involuntary manslaughter, as a lesser offense of felony murder." Thereafter, the defendant filed a posttrial motion for judgment of acquittal or arrest of judgment in which he claimed, among other things, that his involuntary manslaughter conviction should be vacated because involuntary manslaughter is not a lesser included offense of felony murder. The trial court denied the defendant's motion, and then after discussing how the defendant "did all he could to avoid any responsibility whatsoever for the death of Michael Chambers," the court sentenced him to 4½ years' imprisonment.

■ The issue in this case is not whether felony murder encompasses involuntary manslaughter as a lesser included offense. For if it were, principles of *stare decisis* would compel us simply to stand by precedent of this court and find that the trial court improperly convicted the defendant of a crime of which all the elements had not been charged. As defendant *now* notes, this court has held that involuntary manslaughter is not a lesser included offense of felony murder. The basis for this holding can be traced back to *People v. Weathers*, 18 Ill. App. 3d 338 (1974), in which the defendant asserted that the trial court erred in refusing his proposed involuntary and reckless conduct jury instructions in a felony murder case. This court held:

"We find this argument unpersuasive. It was the State's theory that the defendant was guilty of murder under the so-called 'felony murder rule'. (Ill. Rev. Stat. 1969, ch. 38, par. 9—1(a)(3).) This provides that a person is guilty of murder if he kills an individual while attempting or committing a forcible felony. No intent is

required, and the accused need not be the actual perpetrator of the killing. (*People v. Brooks* (1972), 51 Ill. 2d 156, 281 N.E.2d 326.) It follows, then, that it would be impossible for one committing a homicide during the course of a forcible felony to be guilty of manslaughter. In the present case the defendant admitted participation in a planned armed robbery. Therefore, it would have been impossible for the jury to have found him guilty of manslaughter or reckless conduct, and any conjecture as to the precise circumstances under which the gun was discharged is immaterial." *Weathers*, 18 Ill. App. 3d at 345-46.

See also *People v. McCarroll*, 168 Ill. App. 3d 1020, 1023 (1988) ("Where the sole murder charge against a defendant is based on felony murder, no involuntary manslaughter charge need be given").

We also considered this issue in *People v. Williams*, 315 Ill. App. 3d 22 (2000). There, the defendant was charged with intentional murder, knowing murder, and felony murder under sections 9—1(a)(1), (a)(2), and (a)(3) of the Illinois Criminal Code of 1961 (720 ILCS 5/9—1(a)(1), (a)(2), (a)(3) (West 1994)), but the State dismissed the murder charge under section 9—1(a)(1) following jury selection. After the trial court indicated that it would give an involuntary manslaughter instruction as a lesser included offense, the State dismissed the section 9—1(a)(2) murder charge. Because only the felony murder charge, section 9—1(a)(3), remained, the trial court refused to give second degree murder or involuntary manslaughter instructions. On appeal, we applied the charging instrument approach and held that involuntary manslaughter is not a lesser included offense, stating:

"It is clear that the offense of involuntary manslaughter requires a mental state of recklessness whereas felony murder requires no mental state independent of the mental state of the predicate felony. See *People v. Sandy*, 188 Ill. App. 3d 833, 842-44, 544 N.E.2d 1248, 1254 (1989) (involuntary manslaughter is not a lesser-included offense of felony murder because it requires a reckless mental state and felony murder does not require any mental state independent of that required by the underlying felony); see *People v. McCarroll*, 168 Ill. App. 3d 1020, 1023, 523 N.E.2d 150, 152 (1988) ('if death resulted from recklessness or even accident during the commission of the underlying felony, the defendant would still be guilty of felony murder'). Essentially, involuntary manslaughter requires proof of a more culpable mental state than felony murder. Therefore, where the sole murder charge against a defendant is based on felony murder, no involuntary manslaughter instruction need be given. *McCarroll*, 168 Ill. App. 3d at 1023, 523 N.E.2d at 152. Since involuntary manslaughter is not a lesser-included offense of felony murder, we need not discuss the second prong of the

inquiry—whether evidence exists to permit a jury to rationally find Taylor guilty of the lesser offense." *Williams*, 315 Ill. App. 3d at 32-33.

Based on the above cases, defendant asks us to hold that as involuntary manslaughter is not a lesser included offense of felony murder, we must reverse defendant's conviction and enter a judgment of acquittal. In its brief, the State asks this court to stay our decision in this matter until our supreme court rules on the issue of whether involuntary manslaughter is a lesser included offense of felony murder based on mob action in the case of *People v. Davis*, 335 Ill. App. 3d 1102 (2002), *appeal allowed*, 203 Ill. 2d 554 (2003). We accede to defendant's request that we not stay our decision. We do this for two reasons. We decline to defer our decision in this case solely because a pending, unrelated appeal may or may not alter the applicable legal principles. As the supreme court has observed, we are bound by the existing law until instructed otherwise by that court. *People v. Harris*, 123 Ill. 2d 113, 129 (1988). Also, as we resolve the instant case by applying the doctrine of invited error, whatever decision the supreme court makes in the *Davis* case will not impact our decision.

The trial court in this case did not act upon its own inclination. Instead, it acted upon the bidding of defense counsel and defendant to consider the "lesser" charge of involuntary manslaughter. As noted, after hearing defense counsel's suggestions, the trial court asked whether under the Fifth District's decision in *Davis*, a defendant could "get" involuntary manslaughter as a lesser included offense of felony murder, and defense counsel responded, "[t]hat is correct." Defense counsel then went even further and suggested that the *Davis* court laid out "certain factors" and "parameters" for a trial court to use to determine whether a person could be convicted of involuntary manslaughter as a lesser included offense of felony murder, based upon the evidence of a given case.

■ Our supreme court recently addressed the doctrine of invited error in *People v. Carter*, 208 Ill. 2d 309 (2003). In *Carter*, the defendant was charged with first degree murder for shooting his neighbor to death. The defendant testified that while he did fire his shotgun in the direction of the victim, he did not intend to kill him. The trial court asked the defendant if he wanted the jury to be instructed on involuntary manslaughter and the defendant said that he did not, even though his defense attorney wanted the jury to be so instructed. On appeal, the defendant raised the failure of the trial court to instruct the jury on involuntary manslaughter as an issue. In affirming the defendant's conviction, our supreme court held: "Under the doctrine of invited error, an accused may not request to proceed in

one manner and then later contend on appeal that the course of action was in error. *People v. Villarreal*, 198 Ill. 2d 209, 227-28 (2001); *People v. Lowe*, 153 Ill. 2d 195, 199 (1992); *People v. Segoviano*, 189 Ill. 2d 228, 240-41 (2000). \*\*\* Action taken at defendant's request precludes defendant from raising such course of conduct as error on appeal. See *Villarreal*, 198 Ill. 2d at 227 ('To allow defendant to object, on appeal, to the very forms he *requested* at trial, would offend all notions of fair play' (emphasis in original))." *People v. Carter*, 208 Ill. 2d 309, 319 (2003). The purpose of the invited error rule is to prohibit a defendant from unfairly obtaining a second trial on the basis of error which he injected into the proceedings. *People v. Cortes*, 181 Ill. 2d 249, 283 (1998), citing *Ervin v. Sears, Roebuck & Co.*, 65 Ill. 2d 140, 144 (1976). See also *People v. Morris*, 209 Ill. 2d 137, 190 (2004) (Fitzgerald, J., specially concurring) ("Plainly speaking, this court will not tolerate counsel 'manufacturing' reversible error any more than we would tolerate a prosecutor using unethical tactics to obtain a conviction").

For example, in the venerable *People v. Clements*, 316 Ill. 282 (1925), the defendant argued that it was error for the trial court to submit to the jury the question of his guilt of manslaughter and to sentence him for manslaughter, despite the fact that defendant requested such an instruction. *Clements*, 316 Ill. at 283. The supreme court found:

> "It is a well settled principle of law that a party will not be allowed to take advantage of his own wrong or of an error of the court induced by his own motion. If it was error to instruct the jury upon the question of manslaughter and to submit to the jury the question of plaintiff in error's guilt of the crime of manslaughter, plaintiff in error invited the error, and having done so must accept its results. He cannot ask the court below to make a specific ruling or to proceed in a certain manner and then successfully assign as error in a court of review that the ruling or action of the court is erroneous. *Sheridan v. City of Chicago*, 175 Ill. 421; *Union Traction Co. v. Lundahl*, 215 id. 289; *People v. Darr*, 262 id. 202; 2 R. C. L. 238." *Clements*, 316 Ill. at 284.

In *People v. Feldmann*, 314 Ill. App. 3d 787 (2000), the defendant was charged with the murder of her newborn baby after she attempted to flush her down the toilet. The evidence at trial showed that the defendant's actions were intentional or at least done with knowledge. The trial court instructed the jury on involuntary manslaughter at the defendant's behest. *Feldmann*, 314 Ill. App. 3d at 788. The defendant appealed her conviction of involuntary manslaughter, arguing that there was no evidence to support the verdict. *Feldmann*, 314 Ill. App. 3d at 789. The appellate court agreed that "[t]here was absolutely no

factual basis for concluding that she acted recklessly" and that it was debatable whether she had been convicted of a crime "that she did not commit, and the State did not prove." *Feldmann*, 314 Ill. App. 3d at 795. However, the appellate court affirmed Feldmann's conviction, holding that the defendant could "not be allowed to take advantage of her own wrong or of an error induced by her own motion." *Feldmann*, 314 Ill. App. 3d at 797. The appellate court further noted: "There is an old adage that cautions restraint in what we seek. Its message draws upon the irony that can sometimes mock a successful pursuit." *Feldmann*, 314 Ill. App. 3d at 788. We see no reason to depart from this rule in the case at bar.

In his reply brief, defendant seeks to distinguish the case at bar from the situations presented in *Clements* and *Feldmann*. Specifically, defendant argues that where, as in those cases, a defendant is charged with first degree murder, the lesser included offense of involuntary manslaughter is still legally available to the State. In other words, he claims that in those types of situations, there is no dispute that a defendant could be found guilty of involuntary manslaughter as a lesser included offense of intelligent and knowing murder, if the evidence so warrants. He asserts, however, that those decisions have no bearing on whether a court may contemplate handing down a conviction for a crime not charged in an indictment. Accordingly, he notes that the defendants in *Clements* and *Feldmann* were simply arguing that the evidence was insufficient to support an involuntary manslaughter conviction despite having taken the opposite position in the trial court. Here, however, because the defendant does not argue evidentiary insufficiency, he concludes that *Clements* and *Feldmann* do not provide a basis for affirming the trial court's decision.

While we agree with the defendant that the factual situations in *Clements* and *Feldmann* are different, we do not find that difference in any way weakens the overall thrust of those opinions; namely, that a defendant will be held accountable for any mistakes he injects into his own trial. To be sure, we are not implying that the holdings in *Clements* and *Feldmann* constitute a blanket abrogation of a defendant's right to be informed of the nature and cause of the charges against him. However, where a defendant has indicated to a trial court that he is aware of the possibility that he could be found guilty of a certain crime, even going so far as to suggest that the trial court consider it as an alternative possibility, he cannot seriously contend on appeal that he was *unaware* of that very charge. Certainly, where defense counsel proposed "other options" to the court, and the defendant himself assented to the court's consideration of those "options," it is safe to say that he was sufficiently apprised of those charges.

■ Thus, where the overarching purpose of a defendant's right to be informed of the nature and cause of the charges against him is to provide him with the ability to prepare a defense and to assure him that the charged offense may serve as a bar to subsequent prosecution arising out of the same conduct (*People v. Meyers*, 158 Ill. 2d 46, 51-52 (1994)), the intended goals of that constitutional right have been met here where the defendant himself argued that the court should consider involuntary manslaughter, and that charge would operate as a bar to a later prosecution for involuntary manslaughter. See also *People v. Gilmore*, 63 Ill. 2d 23, 29 (1976) (When a defendant attacks an information or indictment for the first time on appeal, it is sufficient if the defendant is apprised of the precise offense charged with ample specificity to prepare his defense and allow pleading a resulting conviction as a bar to future prosecution arising out of the same conduct). Consequently, we find that the defendant in this case may not now argue before us that he was denied the right to be informed of the crimes for which he was charged, where his counsel's and his own conduct indicate otherwise.

In so finding, we note that the defendant's purported incognizance of the potential penalties for the involuntary manslaughter charge also do not manifest a violation of his constitutional rights. In *People v. Perez*, 113 Ill. App. 3d 143 (1983), *appeal denied*, 94 Ill. 2d 556 (1983), this court considered the United States Supreme Court's decision in *Bordenkircher v. Hayes*, 434 U.S. 357, 54 L. Ed. 2d 604, 98 S. Ct. 663 (1978), *reh'g denied*, 435 U.S. 918, 55 L. Ed. 2d 511, 98 S. Ct. 1477 (1978), and Illinois Supreme Court Rule 402(a)(2) (177 Ill. 2d R. 402(a)(2)), which requires possible penalties be made known to a defendant at the time of pleading guilty, and concluded a trial court is not obligated to inform a defendant of potential sentences where the defendant has not pleaded guilty. Because we agree with *Perez* and because the defendant did not plead guilty in the present case, the trial court did not err in failing to inform of the possible penalties of involuntary manslaughter.

Finally, although not raised by defendant, we also consider whether defendant's argument should be reviewable under the plain error doctrine. Under Supreme Court Rule 615(a), issues affecting substantial rights are reviewable as plain error even where such issues were not properly preserved for review. 134 Ill. 2d R. 615(a). Our supreme court has explained that " ' "before an appellate court can correct an error not raised at trial, there must be (1) 'error,' (2) that is 'plain,' and (3) that 'affect[s] substantial rights.' " " [Citation.] "If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error "seri-

ously affect[s] the fairness, integrity, or public reputation of judicial proceedings.' '' '' *People v. Crespo*, 203 Ill. 2d 335, 348 (2001), quoting *United States v. Cotton*, 535 U.S. 625, 631-32, 152 L. Ed. 2d 860, 868, 122 S. Ct. 1781, 1785 (2002), quoting *Johnson v. United States*, 520 U.S. 461, 467, 137 L. Ed. 2d 718, 727, 117 S. Ct. 1544, 1549 (1997). The record clearly demonstrates that any issue regarding notice to the defendant was waived, and if not waived, any conceivable error did not affect the fairness of the proceedings.

For the foregoing reasons, the trial court's decision is affirmed.

Affirmed.

HARTMAN, J., concurs.

PRESIDING JUSTICE QUINN, specially concurring.

I completely concur with everything in the majority's opinion. I write separately to highlight three recent decisions which I believe are pertinent.

Our supreme court recently reviewed a case that is procedurally very similar to the instant case. In *People v. Knaff*, 196 Ill. 2d 460 (2001), the State indicted the defendant on two counts of delivery of a controlled substance while on a public way, within 1,000 feet of a public housing property. The indictment also included two counts alleging that the same sales occurred, but without the location language. Prior to jury selection, the State nol-prossed the two lesser counts. After the State rested its case, the trial court indicated that it did not believe the State had proved the location element. The State then moved to amend the remaining counts of the indictment by deleting the location element. Over a defense objection, the trial court allowed the amendment and the jury convicted the defendant of the lesser charges. The supreme court affirmed the defendant's convictions, rejecting the defendant's contentions on appeal that the trial court erred in allowing the State to amend the indictment after the evidence was in, holding:

> "[W]e reject the defendant's argument that the trial court erred in allowing amendment of the indictment and the submission of the lesser charges to the jury. We believe that it would be illogical not to allow a trial judge presiding over a jury trial to ultimately submit a lesser-included offense to the jury under the present circumstances. The State's request to dismiss the lesser charges prior to jeopardy attaching in this case was of no import, as the defendant did not actually need to be charged with the lesser offense in order to be convicted of it. The charging instrument

provided both the defendant and the State with a closed set of facts, and both parties had notice of all possible lesser-included offenses and could plan their trial strategies accordingly. See *Novak*, 163 Ill. 2d at 113." *Knaff*, 196 Ill. 2d at 473.

Similarly, in the instant case, defendant was charged with first degree murder and second degree murder of the victim in addition to felony murder. It was not until the day of trial that the first degree and second degree murder counts were nol-prossed. On appeal, defendant posits that the trial court could have found defendant guilty of involuntary manslaughter had the State not nol-prossed the first degree murder charge. This being so, as in *Knaff*, the charging instrument provided the parties "with a closed set of facts, and both parties had notice of all possible lesser-included offenses and could plan their trial strategies accordingly." *Knaff*, 196 Ill. 2d at 473.

The defendant also argues that the concerns expressed by Presiding Justice O'Mara Frossard in her concurring opinion in *People v. Williams*, 315 Ill. App. 3d at 41-42, are very much applicable to the instant case. In *Williams*, Presiding Justice O'Mara Frossard disagreed with the majority's reliance on the holding in *People v. Rixie*, 190 Ill. App. 3d 818 (1989),

"because such reliance tends to lend approval to the prosecution gamesmanship condoned by the court in *Rixie*, where the prosecution was allowed to limit jury instruction to only the charge of felony murder by deciding to nol-pros the charge of first degree murder after evidence had been heard by the jury on the charge of first degree murder and after the court agreed to instruct the jury on the lesser-included offenses of murder. *Rixie*, 190 Ill. App. 3d at 825 (1989)." *Williams*, 315 Ill. App. 3d at 42 (O'Mara Frossard, P.J., specially concurring).

Presiding Justice O'Mara Frossard continued:

"Once the charges are brought and evidence is presented and as a result of those charges and evidence the record reflects that instruction on a lesser-included offense is warranted by the evidence, I believe fundamental fairness requires that a prosecution motion to dismiss the charges that provide the basis for the lesser-included offense instruction should be denied and instruction on the lesser-included offense should be given. Where there is sufficient evidence to support an instruction to the jury on a lesser-mitigated offense, yet the trial court denies the jury the opportunity to return a verdict of guilty on that mitigated offense, such denial contributes to the likelihood of not only inaccurate, but substantially unfair, jury verdicts." *Williams*, 315 Ill. App. 3d at 42 (O'Mara Frossard, P.J., specially concurring).

In the instant case, the State nol-prossed the first and second

degree murder counts before the bench trial began. Consequently, the actions of the State in this case are really not the same as those of the State in *Williams*. Perhaps more importantly, acting at the behest of the defendant, the trial court in the instant case went beyond the protections suggested by Presiding Justice O'Mara Frossard in her concurrence in *Williams*. The trial court rendered a *finding* that defendant was guilty of the "mitigated offense." It is this action of the trial court of which defendant now complains.

Finally, our supreme court recently addressed the manner in which courts of review should consider findings made by trial courts after a bench trial. In *People v. McCoy*, 207 Ill. 2d 352 (2003), our supreme court applied their holding in *People v. Jones*, 207 Ill. 2d 122 (2003), that inconsistent verdicts may not provide the sole basis to challenge an appellant's convictions, to bench trials. *McCoy*, 207 Ill. 2d at 355. Our supreme court based their decision in *Jones* on the decision of the United States Supreme Court in *United States v. Powell*, 469 U.S. 57, 83 L. Ed. 2d 461, 105 S. Ct. 471 (1984), which "reiterated that consistency in the verdicts is not required as a matter of constitutional law and that inconsistent verdicts can often be explained as a product of juror lenity." *Jones*, 207 Ill. 2d at 130, citing *Powell*, 469 U.S. at 63, 83 L. Ed. 2d at 467, 105 S. Ct. at 475.

In *McCoy*, our supreme court held:

> "Though we do not encourage trial judges to stray from their duty to follow the law, we do acknowledge, without condoning, the clear reality that trial judges may exercise lenity in what they perceive as the interests of justice." *McCoy*, 207 Ill. 2d at 358.

While the *McCoy* court said this in the context of what they termed "inconsistent verdict[s] rendered in a bench trial" (*McCoy*, 207 Ill. 2d at 358), I believe that it is applicable to our review of the actions of the trial court in the instant case. Here, the defendant asked the trial court to consider the holding in *People v. Davis*, 335 Ill. App. 3d 1102, *appeal allowed*, 203 Ill. 2d 554, and find the defendant guilty of involuntary manslaughter. Had the trial court not done as defendant requested, the only alternatives for the trial court would have been to find defendant either guilty or not guilty of felony murder. While the State was willing to take this risk, defendant was not. I believe that while there was a good deal of evidence to support the trial court's finding that defendant's actions demonstrated a reckless indifference to human life, the evidence in the record would also support a finding of guilty of either felony murder or first degree murder based on defendant's knowledge that his acts created a strong probability of death or great bodily harm to the victim. Consequently, defendant's decision to ask the trial court to consider involuntary manslaughter benefitted him greatly.